**Lori HYDEN, By and Through her parents and next friends, Ken and Shirley HYDEN**

v.

**The BOARD OF EDUCATION OF WILSON COUNTY.**

No. 3–88–0937.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 22, 1989.

Gary Buchanan, Brentwood, Tenn., for plaintiff.

Comer L. Donnell, Lebanon, Tenn., for defendant.

## MEMORANDUM

HIGGINS, District Judge.

This is an action for attorney's fees under the Handicapped Children's Protection Act of 1986 (HCPA), 20 U.S.C. § 1415(e)(4)(B). Plaintiff's attorney, Gary Buchanan, Esquire, asserts that his client was the "prevailing" party on the merits within the terms of the Act and therefore that the plaintiff is entitled to an award of reasonable attorney's fees. The appropriate rate for such fees, if any are to be awarded, is also in dispute. This Court has jurisdiction of the matter by virtue of 20 U.S.C. § 1415(e)(4)(A).

Lori Hyden, born January 30, 1984, lives in Wilson County, Tennessee, with her parents, and is thus within the normal territorial limits of the jurisdiction of the Wilson County School Board. She has been diagnosed as suffering from impaired hearing, with consequent damage to the development of her speech and language. She is thus a handicapped child within the definition in the Education of All Handicapped Children Act (EAHCA), 20 U.S.C. § 1400 *et seq.* and HCPA.

The School Board knew of Lori's existence from September 1987. It first learned of her handicap in December of that year from a project coordinator at Peabody College, Vanderbilt University, who had been working with Lori since August 1987 under the Peabody College Integration Program for Children with Multiple Sensory Impairments.

Soon after the School Board was advised of Lori's status, it began to negotiate with her parents to determine what sort of learning programs should be offered to her. The first contact with Lori's parents came at the Board's initiative on December 22, 1987. The Board also obtained Lori's test scores from Peabody. On April 28, 1988, according to the Board's usual procedure, a meeting of a Multidisciplinary Team (M–Team) was held to discuss Lori's status and determine what action was appropriate. In Lori's case, the M–Team consisted of Vicki Jacobs, a speech teacher; Christie Refseth, a deaf education specialist; Cynthia Howie, a school psychologist; Mary Y. Sims, a specialist in educating the retarded and visually impaired; Karl Puryear, principal of South Side Elementary School in Lebanon; and Carolyn Beard and Brenda Trescot, guidance counsellors. The meeting was also attended by Lori's parents, and by various therapists who had worked with Lori at Peabody.

At this meeting, Lori's parents expressed dissatisfaction with the options currently available, and indicated their preference for a comprehensive program of full-day, five-day-a-week classes for Lori, incorporating certain specific therapies and services. A second M–Team meeting was convened on May 16. At this time, the Board proposed that Lori attend the Sam Houston School in Lebanon, where she would be provided with a deaf education specialist one hour per day, five days a week. She would also see a speech therapist for half an hour on three days of each week and consult a vision specialist twice a week.

The Hydens were unsatisfied with this proposal and requested a due process hearing to be conducted "by the State Educational agency or by the local educational agency ... as determined by state law ..." under the provisions of 20 U.S.C. § 1415(b)(2). Accordingly, a hearing was held before Dr. Michael C. Hannum of the University of Tennessee, the hearing officer assigned by the State Department of Education. On September 20, 1988, Dr. Hannum entered his findings and conclusions. For purposes of this action, the most pertinent of his findings are the following:

1. The child *has been* denied identification, evalution [sic], and entry into a program of special education appropriate to her conditions and needs [in violation of the Act and the pertinent regulations enacted thereunder].

. . . .

The preponderance of evidence and testimony presented in this case clearly supports [sic] the conclusion that the School System was negligent in their [sic] attempt to identify, evaluate, and subsequently provide appropriate services to this child.

2. The child *has been* denied special education and related services. This statement is supported by the previous argument regarding services not being rendered in a timely manner.

3. The Respondent *has not* violated 34 C.F.R. section 300.552 regarding offering placement not based on an I.E.P. [Individual Education Plan].

. . . .

4. The Respondent *has not* failed to maintain a continuum of alternative placements as mandated by 34 C.F.R. section 300.551. Evidence or testimony to support this contention was not persuasively presented in this case. In fact the School System has demonstrated extreme flexibility in their [sic] more recent attempts to accommodate this family and their child.

5. The Respondent *has not* violated the child-find requirements set forth in 34 C.F.R. section 300.200, by failing to identify mildly handicapped four year old [sic]. The contention was not conclusively supported by evidence or testimony presented in this case. [Emphasis in original]

The hearing officer added a "synthesis of Issues" stating, in part, as follows:

To the credit of both parties and their able advocates the hearing process did result in the resolution of most significant issues. By the conclusion of the Hearing the parents and the School System had agreed upon the appropriate

placement of the child; as well as the details regarding support from the Peabody Project and related services.

The hearing officer rejected the parents' demands for specific guarantees concerning the size of classes and certain other details, and ordered a new M–Team meeting so that these arrangements could be integrated into a new IEP for Lori.

The correctness of the hearing officer's findings is not before this Court.

Under HCPA, "in any action or proceeding brought [under the Act], the court, in its discretion, may award reasonable attorney's fees … to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). *See also Eggers v. Bullitt County School Dist.*, 854 F.2d 892, 894 (6th Cir.1988). Because the hearing officer found that the School Board had been negligent in identifying and supplying Lori's needs, this Court is satisfied that Lori was a "prevailing party" within the terms of the Act. A finding that a school board acted in good faith does not immunize that district from liability for fees. *Fontenot v. Louisiana Bd. of Elementary and Secondary Education*, 835 F.2d 117, 120 (5th Cir.1988).

However, § 1415(e)(4)(D) states in part:

(D) No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—

. . . .

(iii) the court or administrative officer finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.

Subsection (E) provides an exception in cases where the party was "substantially justified in rejecting the settlement offer."

On July 5, 1988, the Director of Special Education Services for the Board, G. Michael Dover, dispatched a letter to the Hyden's counsel. Because of its importance, it is reproduced in toto.

July 5, 1986
Mr. Gary Buchanan
5155 Maryland Way
Brentwood, TN. 37027
Dear Mr. Buchanan,

Thank you for your letter of June 30 outlining the position of the parents of Lori Hyden. Be advised that several options of service were discussed before the current recommended program was offered. One of those options was in fact an early intervention classroom with other four year olds. Your statement regarding the school systems [sic] failure to educate children in this age range is obviously incorrect.

In an effort to reach a settlement the Wilson County School System agrees to meet with the [sic] you and the parents to develop a program for Lori which will satisfy your request. The child will be placed in an early intervention classroom at Sam Houston Elementary School which has other four year olds enrolled. We also feel that it is important for Lori to have speech therapy and consultation with a vision specialist and will continue with this recommendation. Special transportation will be provided as previously recommended.

My personnel believe that the program recommended at the multidisciplinary team meeting of May 16, 1988 is appropriate to Lori's condition and need, however, we are prepared to meet your request as described above in an effort to resolve this matter. Contact me at your earliest convenience to schedule a meeting where we can finalize the program.

Sincerely,
G. Michael Dover, Director
Special Education Services

Mr. Buchanan, after consulting the Hydens, advised the Board by telephone on August 1, 1988, that this offer was rejected. At oral argument, he indicated that he never considered it a "serious" offer because the Hydens had already seen Sam Houston School and found it inappropriate.

This Court is of the opinion that the letter of July 5 was not only a "serious" settlement offer—it came close to being a capitulation. It provided for placement of

Lori in a class with other four-year-olds with access to continual speech and vision therapy. More importantly, it is evident that the relief offered in this letter does not differ materially from that eventually obtained through the hearing. Thus, from the record, it appears that this case falls within the exception of § 1415(e)(4)(D)(iii).

Plaintiff's counsel argues that the exception does not apply, since he and his clients were "substantially justified" in rejecting the settlement offer, the Hydens having already expressed their disapproval of the facilities at Sam Houston School. But, if that was the reason, it seems hard to explain why counsel took almost a full month to communicate the rejection to the Board. At the very least, counsel should have *promptly* informed the Board of any objection to the offer, so that negotiations could continue. He might not have wished to accept this particular olive branch, but it does not follow that he was "substantially justified" in answering with cannon fire.

The record as a whole makes it hard for the Court to avoid the conclusion that this matter was contested at the administrative level largely because plaintiff's counsel was spoiling for a fight.

HCPA is a new statute, and this Court could discover no reported case on the problem of the sufficiency of a settlement offer on whether a party was justified in rejecting it. In *Laura I. v. Clausen*, 676 F.Supp. 717, 720 (M.D.La.1988), one court held that a party could not escape liability for attorneys' fees by showing that he had "vigorously attempted to negotiate a settlement," but the opinion is silent as to whether the actual relief turned out better than that proposed in the settlement offers.

The legislative history on the section is sparse, consisting of little more than statements by Senators Kerry and Simon during the brief Senate floor debate on the bill on July 17, 1986. The former said that the settlement exception should apply only where "it is not obvious that the offer was as favorable as the final award." But this Court has already found that the offer *was* obviously as favorable as the eventual relief. Senator Simon's remarks are to similar effect. 132 Cong.Rec. 16,824–25

(1986). It will take more than this to persuade this Court that Congress meant to encourage unnecessary litigiousness by rewarding intractability in the face of settlement offers.

Plaintiff's final argument is that the relief awarded is not the same as that in the settlement offer, since the composition of the class at Sam Houston has since changed, with some of the previous students being shifted out of the class. In the first place, this argument overlooks the hearing officer's wise conclusion that the Board should not be bound to guarantee a fixed quota of students in the class. Moreover, to demand that the composition of the class be frozen for Lori's benefit, without regard for the educational needs of the other children, would be manifestly unreasonable.

In short, this Court, in its discretion, finds that under the circumstances an award of attorney's fees is not appropriate. This conclusion makes it unnecessary to determine the applicable rate for fees.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, plaintiff's action for attorney's fees is dismissed with prejudice.

It is so ORDERED.