**Sara GROSS, as Parent and Next Friend of Lucas GROSS, Plaintiff**

v.

**PERRYSBURG EXEMPTED VILLAGE SCHOOL DISTRICT, Defendant.**

**No. 3:03 CV 7286.**

United States District Court, N.D. Ohio, Western Division.

March 9, 2004.

Thomas J. Zraik, Sylvania, OH, for Sara Gross, as Parent and Next Friend of, Lucas Gross, Plaintiffs.

B. Gary McBride, Theodore M. Rowen, Spengler Nathanson, Toledo, OH, for Perrysburg Exempted Village School District, Defendant.

## ORDER

CARR, District Judge.

This is a special education case in which the plaintiff, Sara Gross, on behalf of her son, Lucas, requested and received a due process hearing against defendant Perrysburg Exempted Village School District to determine the services and accommodations required to provide Lucas a free and appropriate public education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

Pending is plaintiff's motion for attorney fees and costs pursuant to IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3), its implementing regulations, 34 C.F.R.

§ 300.513, and parallel Ohio law, O.R.C. § 3323.05. For the following reasons, plaintiff's motion shall be granted.

## BACKGROUND

Plaintiff's son, Lucas, attends school in defendant's school district. Prior to the administrative proceedings in the instant case, plaintiff believed that Lucas was receiving inadequate services and accommodations under his Individual Education Plan ("IEP"), which is the document that sets out the services necessary to provide a child a free appropriate public education ("FAPE"), as guaranteed by IDEA.[1] Plaintiff claimed that defendant had failed properly to acknowledge Lucas's disabilities and had therefore provided inappropriate and inadequate services, which adversely impacted his education.

Plaintiff demanded a due process hearing before an Impartial Hearing Officer ("IHO"), asking for a finding that: 1) defendant had denied Lucas FAPE; 2) Lucas's IEP was inappropriate; and 3) Lucas has Asperger's Syndrome, an autism-spectrum disorder with which Lucas had been diagnosed by his doctors. (Doc. 7, Decision of the Impartial Hearing Officer, at 2).

Plaintiff sought to have Lucas transferred, at defendant's expense, to a school for autistic students outside of defendant's district, where she believed he would receive the care, and education, he needed. (*Id.* at 3). In the alternative, she request-ed in her post hearing brief that defendant be ordered to develop an IEP which included the services plaintiff believed were necessary to meet Lucas's needs.[2] (Doc. 7, Petitioner's Post Hearing Arguments, at 21–22).

The due process hearing took place over five days, during which the IHO heard testimony from seventeen witnesses, of whom one was an expert physician called by plaintiff and one was an expert physician called by defendant, and submitted into evidence over two volumes of exhibits. (Doc. 7, Decision of the Impartial Hearing Officer, at 2). After the hearing, the IHO issued a decision finding that defendant had failed to provide Lucas FAPE because his IEP was inadequate to address his unique needs. Specifically, the IHO found that

> [w]hat compels the conclusion that this IEP fails to provide FAPE is the absence of educational and related services which are necessary to address the student's unique needs. This bright and capable student is regressing academically, experiencing disciplinary issues due to his poor socialization skills, and faces the very real possibility that he may not be promoted to 8th grade.... [T]he student has needs in the area of socialization and language pragmatics, modifications to and assistance with homework, as well as a behavior plan to eliminate the negative

1. "[T]he IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

2. Plaintiff requested that the IHO order defendant to include in Lucas's IEP specific services, including academic goals and objectives, socialization goals and objectives, language pragmatics, after-school tutoring, and recognition of his Asperger's Syndrome by school officials. Plaintiff explained that "[b]ecause [plaintiff has] requested [defendant] to include most or all of these services in the past, which [defendant has] illegally refused or denied, the IHO is urged to make specific findings and an order requiring [defendant] to include these specific services in Lucas's IEP, rather than leaving it up to the IEP team." (Doc. 7, Petitioner's Post Hearing Arguments, at 21).

behaviors that interfere with his learning. In addition to these services, [plaintiff's expert] recommended oral testing, the assistance of a scribe, other options for written work, and a one-on-one aid. These are services which are necessary for the student to receive an appropriate educational benefit.

(*Id.* at 19).

The IHO also found that "it does appear as if the inadequacies of this student's IEP are related to a lack of understanding of his diagnosis of Asperger's Syndrome and how it impacts his ability to learn." (*Id.*) Although the IHO was without authority to declare that Lucas has Asperger's Syndrome, she found that defendant's failure to address Lucas's Asperger's Syndrome diagnosis was a cause of his academic regression in seventh grade.

Because defendant had denied Lucas FAPE for the current academic year, the IHO ordered defendant immediately to provide: 1) after-school tutoring for thirty minutes three days per week for the remainder of the school year; 2) summer tutoring in all subjects in which Lucas received a final grade of C or lower; and 3) language pragmatics and socialization skills services during the summer tutoring program. She also ordered defendant to write a new IEP for Lucas for the 2003–2004 school year including, at a minimum, language pragmatics, socialization skills, and after-school tutoring. The IHO also recommended that the parties incorporate into the new IEP the other recommendations of the parties' experts.

Furthermore, the IHO stated that "[t]here was overwhelming evidence that the provision of not more services, but different services to this very bright and capable student, would go far in providing him with the appropriate educational benefit." (*Id.* at 21). The IHO declined to order placement in the out-of-district school requested by plaintiff because she found that defendant could provide FAPE under the conditions of her order and do so in the least restrictive environment for Lucas.

Plaintiff seeks to recover her attorney fees and costs from defendant. Defendant opposes plaintiff's motion and moves to deny or reduce the award of attorney fees and costs. Defendant argues that plaintiff's motion should be denied because the IHO did not require placement in the out-of-district school, as plaintiff requested. Thus, defendant argues, plaintiff is not a "prevailing party" under IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B). In the alternative, defendant argues that the amount of fees plaintiff requests should be significantly reduced because defendant offered a settlement prior to the hearing that was equivalent to the outcome plaintiff achieved at the hearing and because plaintiff failed to attain her primary goal of having Lucas transferred to another school. Defendant also disputes plaintiff's request for fees for work completed by her attorney's paralegal and for her expert witness fees.

## DISCUSSION

IDEA expressly allows an award of reasonable attorney fees to the parent of a child with a disability who is the prevailing party under the Act. 20 U.S.C. § 1415(i)(3)(B); 34 C.F.R. § 300.513. In its interpretation and application of § 1415(i)(3)(B), the Sixth Circuit has looked to cases decided under both that provision and the fee-shifting provision for civil rights actions, 42 U.S.C. § 1988. *See Krichinsky v. Knox County Sch.*, 963 F.2d 847, 849 (6th Cir.1992).

A district court has discretion to award attorney fees based on the facts of each case. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). As a preliminary matter, the court

must determine that the plaintiff qualifies as a "prevailing party" pursuant to § 1415(i)(3)(B). *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't. of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Hensley*, 461 U.S. 424, 103 S.Ct. 1933. If she is the prevailing party, plaintiff is entitled to a fully compensatory fee award if she obtained "excellent results." *Hensley*, 461 U.S. at 435–36, 103 S.Ct. 1933. The fee award is to be reduced if she "achieved only partial or limited success." *Id.* A district court determines the amount of the fee award based on the significance of the results obtained by the prevailing party. *Id.* at 437–38, 103 S.Ct. 1933.

## A. Plaintiff Is the Prevailing Party

■ To qualify as a prevailing party under IDEA's fee-shifting statute, a plaintiff "must obtain at least some relief on the merits of [her] claim." *Farrar*, 506 U.S. at 111, 113 S.Ct. 566. This means that "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree ...." *Id.* (internal citations omitted). Plaintiff must have been more than a mere catalyst for change that occurred without the need for judicial intervention. *Buckhannon*, 532 U.S. at 604–05, 121 S.Ct. 1835 (holding that, to be a prevailing party, a plaintiff must obtain a judgment or judicially-enforced consent decree; a party does not prevail without a "judicially sanctioned change in the legal relationship of the parties"). "In short, a plaintiff 'prevails' when actual relief on the merits of [her] claim materially alters the legal relationship between the parties ...." *Farrar*, 506 U.S. at 111, 113 S.Ct. 566.

If the plaintiff did not achieve success on all of her claims, she must show that she succeeded "on any significant issue in litigation which achieves some of the benefit ... [she] sought in bringing suit." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 (internal quotation omitted); *see also Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir.1993). Defendant in the instant case argues that plaintiff was "not significantly successful in achieving the claims set forth in her request for impartial due process hearing." (Doc. 10, at 3). Defendant bases this contention on the fact that the IHO rejected plaintiff's request for out-of-district school placement.

■ The result defendant seeks would contravene both the letter and spirit of IDEA. As plaintiff points out, if she has succeeded on any significant issue that achieved some of the benefit she sought in bringing suit, "the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Ass'n.*, 489 U.S. at 792, 109 S.Ct. 1486.

In the instant case, plaintiff requested that the IHO find: 1) defendant had denied Lucas FAPE; 2) Lucas's IEP was inappropriate; and 3) Lucas has Asperger's Syndrome. The IHO found both that defendant had denied Lucas FAPE and that Lucas's IEP had been inappropriate. Moreover, though she lacked the authority to declare definitively that Lucas has Asperger's Syndrome, the IHO noted that both Lucas's doctor and defendant's expert had diagnosed him with the disorder and that defendant's refusal to acknowledge or accept this diagnosis was a primary reason that Lucas's IEP was inappropriate and FAPE had been denied him. This was the bedrock contention on which plaintiff rested all her claims for modification of Lucas's IEP.

To be sure, plaintiff sought eagerly and earnestly to have Lucas transferred to an

out-of-district school for autistic children. In addition and, in the alternative, she requested that his IEP be rewritten to provide him with other, albeit lesser, services responsive to his educational needs. The IHO decided to implement plaintiff's alternative request, and ordered defendant to rewrite Lucas's IEP to include such specific additional services and after-school tutoring.

Defendant claims that plaintiff was unsuccessful because her initial and most fervent request was for Lucas to be placed in an out-of-district school, and she did not request the additional IEP services the IHO ultimately ordered until *after* the hearing. Defendant urges that the court adopt a rule that plaintiffs must be successful in achieving their pre-hearing requests to be considered the prevailing party. Such a rule would be most ill-advised for several reasons.

First, it appears that plaintiff attained significant success with regard to a majority of her claims and requests. Her demand for a due process hearing led to an order requiring defendant to acknowledge Lucas's socialization and language pragmatics needs. The order also compelled defendant to draft an IEP that would effectively address those needs. These mandates markedly changed the legal relationship between the parties. Plaintiff obtained a ruling that her son was being denied FAPE in violation of IDEA *and* an order directing her son's school district to take specific actions to ensure that Lucas would not continue to be denied FAPE.

In *Phelan,* the Sixth Circuit explained that:

> [t]he due process hearings were dynamic and interactive, not static. Plaintiff's action resulted in a marked change in the legal relationship between the parties in a number of ways. First, plaintiff succeeded in obtaining a determination that SIBIS was a viable option for ...

[her son].... Second, plaintiff's persistence brought about a definite change in ... [her son's] legal relationship with defendants. Before the due process hearings, defendants proposed merely to continue an IEP that was admittedly unable to address, let alone reduce, ... [the child's] SIB. Now, defendants are *required* to implement a new IEP with new approaches to ... [the child's] SIB.

8 F.3d at 373–74 (emphasis in original). Here, as in *Phelan,* plaintiff obtained an IHO determination in accordance with her contention that her son's needs were not being met as required by IDEA. On the basis of this finding, plaintiff, like the plaintiff in *Phelan,* obtained an order requiring defendant to implement a new IEP for Lucas.

To require, as defendant suggests, that to recover fees and costs a plaintiff must succeed on every request in her initial demand for a due process hearing would undercut the purpose of the fee-shifting provision and contravene established precedent. The Sixth Circuit has held that:

> the plaintiff's success should not be measured solely in terms of what she requested in the complaint. The plaintiff succeeds to the extent that the school's proposed IEP is shown to be inappropriate, even if the ALJ and the courts are not convinced to order the plaintiff's own preferred alternative.

*Kari H. v. Franklin Special Sch. Dist.,* No. 98–5703, 1999 WL 486400, at *2 (6th Cir.1999) (citing *Hensley,* 461 U.S. at 435–36, 103 S.Ct. 1933; *Phelan,* 8 F.3d at 373).

Where they have gained much that they sought, parents should not be decreed to have failed because their grasp did not match their reach. This is true especially when, as in the instant case, the outcome of the hearing is acceptable to the plaintiff in light of the experts' testimony and the established needs of the child. Although

plaintiff initially requested placement in another school as the best and most acceptable outcome, she apparently changed her mind during the hearing and wrote a post-hearing brief to the IHO stating that if socialization and language pragmatics goals and after-school tutoring were included in a new IEP, that would be an acceptable alternative to out-of-district placement.

Moreover, if parents were required to recover on every request in their initial complaint, the desire to recover attorney fees might force them (or their attorneys) to request less than optimal results or to refrain from requesting alternative solutions to redress their children's situations. The opportunity to obtain fees, rather than being an inducement to seek what is best for the child, could create a conflict of interest between parent and child or counsel and client. This, in turn, could lead to lowered demands, premature or inadequate compromise, or otherwise weaken the assertion of what is best for the child.

In any event, denying fees on the basis of a failed demand for relief would defeat the purpose of holding interactive, dynamic due process hearings in which IHOs are charged with assessing the parties' evidence and arguments and crafting the best solution for educating children with disabilities. IDEA proceedings differ from conventional court proceedings in that the optimal result for a child may not be apparent to the parties prior to the hearing, but may become known only as evidence is heard, debated, and evaluated. This is what appears to have happened in the instant case, where the IHO heard evidence from both parties about Lucas's disabilities and needs for five days before reaching her decision.

The fact that plaintiff did not achieve her initial demand and optimal result—placement in a school outside defendant's district—is not a basis for denying her

"prevailing party" status. Thus, plaintiff is a prevailing party for the purposes of 20 U.S.C. § 1415(i)(3)(B) and may recover fees from defendant.

## B. Plaintiff's Recovery of Fees Is Not Barred or Limited by 20 U.S.C. § 1415(i)(3)(D)

Defendant suggests that plaintiff should not recover fees for any work accomplished by her attorney after March 10, 2003, because she was offered and rejected a settlement pursuant to 20 U.S.C. § 1415(i)(3)(D), which provides:

> [a]ttorneys' fees may not be awarded and related costs may not be reimbursed ... for services performed subsequent to the time of a written offer of settlement to a parent if—... the court ... finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

Section 1415(i)(3)(E) provides an exception to this provision where a parent was "substantially justified in rejecting the settlement offer."

Defendant's March 10, 2003 settlement offer included:

1) Lucas's continued placement at defendant's school under his current IEP, with "such accommodations and/or modifications as may be developed by the IEP team" (Doc. 9 exh. 4, at 1);

2) IEP team meetings not less frequently than quarterly;

3) a behavior evaluation of Lucas, as defendant's expense;

4) a "sensory evaluation" at defendant's expense (Id.);

5) counseling for Lucas if requested by plaintiff;

6) transportation to school for Lucas;

7) facilitation of Lucas's involvement in school clubs and activities;

8) minimization of "homework to be completed by ... [Lucas] at home" by

structuring Lucas's time so that he could complete assignments during his "Effective Studies" class period (*Id.* at 2);

9) observation of "grade modification" for Lucas (*Id.*);

10) consideration of the alternative school at which plaintiff had requested Lucas be placed;

11) payment of $10,000 as plaintiff's attorney fees and costs to plaintiff.

Defendant argues that this settlement offer would have achieved substantially the same results as did the decision of the IHO and that, regardless, the results of the IHO's decision were not more favorable than those proposed by defendant in its offer. Essentially, defendant argues that because any modifications to Lucas's IEP must be accomplished by his IEP team, and because the March 10, 2003 offer of settlement proposed to re-evaluate Lucas's IEP, the IHO's order that Lucas's IEP be rewritten to include language pragmatics, socialization skills, and after-school tutoring was unnecessary. Defendant asserts that the IEP team's voluntarily-undertaken re-evaluation of Lucas's IEP would have found that the same additional services were necessary and produced the same results as the IHO's decision.

Defendant supports this assertion by reference to Lucas's Evaluation Team Report, which was underway when defendant made its offer of settlement, but not signed until May 7, 2003, after the IHO's April 30, 2003 decision. The report changed Lucas's disability indication to "autism spectrum" and ADHD (Doc. 10 exh. 1, at 36) and called for language pragmatics and socialization goals.

Plaintiff claims that defendant's March 10, 2003 offer of settlement "lacked any substantive provision relating to services, accommodations, modifications, goals or objectives" for re-writing Lucas's IEP. (Doc. 11, at 20). Plaintiff found defen-

dant's offer unaccceptable because Lucas's IEP team included primarily the same school officials "who for years had refused to accept Lucas's disability, had consistently characterized his problem behaviors as volitional, had refused to include socialization and language pragmatics goals on his previous IEPs, and had time and time again substituted punishments for services." (*Id.* at 21). Plaintiff contends that "the relief obtained by the [plaintiff] that was not available in defendants' offer of settlement included the IHO's determination that Lucas's IEP denied him a FAPE, as well as directives ordering the defendants to include socialization skills training, language pragmatics, and other additional services and modification to address his unique disabilities...." (Doc. 11, at 24).

■ In evaluating an offer of settlement for the purposes of § 1415(i)(3)(D), a court inquires whether the outcome was more favorable to the parents than the offer of settlement, *not* whether plaintiff's rights were violated or the outcome and the settlement offer were identical. *See Dell v. Bd. of Educ.,* 918 F.Supp. 212, 217 (N.D.Ill. 1995) ("the relief finally obtained by Plaintiffs was not, in fact, more favorable than Defendant's offer, in spite of the fact that both hearing officers' decisions are replete with findings that Defendant violated Plaintiffs' son's rights"); *Mr. and Mrs. L. v. Woonsocket Educ. Dep't.,* 793 F.Supp. 41, 44 (D.R.I.1992) (comparing the results obtained to those offered in defendant's offer of settlement and concluding the results obtained were not more favorable).

In the few cases in which courts have considered whether the results obtained were more favorable than the results offered in settlement, the court has focused on the conduct of the plaintiff in rejecting the defendant's offer and whether that conduct was justified by a better result at

the end of the due process hearing. *See Joshua H. v. Lansing Pub. Sch.*, 161 F.Supp.2d 888, 893–94 (N.D.Ill.2001) (finding that plaintiffs had rejected, without negotiation, an offer of settlement that was identical to the achieved outcome); *Mr. and Mrs. L.*, 793 F.Supp. at 44–45 ("I begin my comparison of the results obtained ... with those offered ... by noting that plaintiffs never responded to the settlement offer with a counter-offer or list of additional demands .... Having failed to make even a good faith attempt at settlement, plaintiffs now seek thousands of dollars in attorneys fees."); *Hyden v. Bd. of Educ. of Wilson County*, 714 F.Supp. 290, 292–93 (M.D.Tenn.1989) (plaintiffs argued that they were justified in rejecting defendant's offer of settlement, but the court disagreed and held that plaintiffs failed to act quickly and reasonably to negotiate a settlement).

In the instant case, plaintiff contends that she was justified in rejecting defendant's offer because it lacked details that would ensure that Lucas's IEP would be modified to include the services plaintiff argued were essential to provide him with FAPE. She is correct that defendant's written offer of settlement includes no details regarding how Lucas's IEP would be modified. Morever, the settlement offer does not guarantee that the IEP will be modified. It promises only that Lucas's IEP would be re-evaluated and modified with "such changes as *may be* developed by the IEP team." (Doc. 9 exh. 4, at 1) (emphasis added). Because of its lack of specificity, it is not possible to determine what the results of the settlement offer would have been, had plaintiff accepted the offer.

Defendant cites the Evaluation Team Report in support of its contention that Lucas's new IEP would have contained the same services and findings as those ordered by the IHO. That Report, however, is dated after defendant's offer of settlement and the IHO's decision. That Report, moreover, necessarily incorporated the findings and orders directed by the IHO in her May 30, 2003 decision. Defendant has submitted an affidavit by Elizabeth Rohrbacher, Director of Pupil Services of defendant's school district, to the effect that the IEP team, based on its ongoing review of Lucas's situation, would have made the same changes to Lucas's IEP as those ultimately ordered by the IHO. This bare assertion, unsupported by written evidence accompanying the March 10, 2003 offer of settlement, fails to show that acceptance of the offer would have led to the same result as that achieved through the IHO's decision. Finally, defendant has offered no evidence that plaintiff failed to respond to the settlement offer or negotiated in bad faith prior to the due process hearing.

It appears, therefore, that the outcome achieved by plaintiff at the due process hearing was more favorable to Lucas than the settlement offer because it included directives and orders intended specifically to ensure that Lucas would receive the services plaintiff sought for him. Furthermore, the lack of specificity in the offer of settlement's terms suggests that plaintiff was justified in rejecting the offer and pursuing her request that defendant be required to provide additional services addressing Lucas's unique needs as a result of his Asperger's Syndrome.

Thus, § 1415(i)(3)(D) does not apply in the instant case and plaintiff's recovery of fees is not barred or limited by the March 10, 2003 offer of settlement.

### C. The Amount of Plaintiff's Fee Award

Because plaintiff is the prevailing party in the instant case, and because her fee award is not barred by defendant's offer of settlement, she is entitled to recover attor-

ney fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B). The starting point for analyzing the amount of such award is the "lodestar" calculation—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. To be reasonable, a fee request may not include hours that are excessive, redundant, or otherwise unnecessary, because "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary ...." *Id.* at 434, 103 S.Ct. 1933.

Defendant does not challenge the reasonableness of the hourly rate used by plaintiff's counsel or counsel's experience and qualifications, which, in any event, are well known to and favorably regarded by this court. Defendant does, however, allege that plaintiff's fee request is unreasonable insofar as her attorney billed several hours for unnecessary research and work by a paralegal. Defendant also alleges that plaintiff may not recover her expert witness fees.

Additionally, defendant claims that plaintiff's fee request should be adjusted downward based on the results plaintiff obtained at the due process hearing. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (noting that determination of the lodestar does not end the inquiry because "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"). Defendant claims that plaintiff should not recover fees for achieving results that she did not request in her initial request for a due process hearing. Defendant also claims that plaintiff's fee award should be reduced to reflect her partial success in not achieving placement in an out-of-district school.

### 1. Plaintiff's Fee Request Will Not Be Adjusted Downward for Unreasonableness

Defendant claims that plaintiff's request for fees is, at the outset, unreasonable because it includes hours spent on unnecessary research, improper paralegal fees, and expert witness fees.

#### a. Unnecessary Research

Defendant first contends, without elaboration, that plaintiff's counsel should not have needed to spend over fifteen hours researching case law and the regulations applicable to the instant case, given his expertise and experience. The time spent on research, however, seems to the court to be eminently reasonable given the complexity and uniqueness of IDEA cases and the different ways the same cases can apply to individual circumstances. Plaintiff's counsel has made an effort to eliminate excessive hours from his account. He has documented his time in hundredths of an hour, which is an appropriate and conservative method of reporting one's work. I find nothing unnecessary in the work done by plaintiff's counsel.

#### b. Paralegal Fees

Defendant also urges the court to deny plaintiff's request for fees for work performed by a paralegal. In support of its argument, defendant cites to a recent decision in which the court held that "[t]o the extent that paralegals and other non-lawyers are allowed to perform work that constitutes 'the practice of law' under Maine law, such practice is inconsistent with Maine law. Because paralegals ... are not admitted to practice law, reimbursement for services cannot be permitted." *Mr. and Mrs. R. v. Maine Sch. Admin. Dist. No. 35*, 40 I.D.E.L.R. 94 (D.Me. Dec. 12, 2003).

Defendant apparently reads *Mr. And Mrs. R* to mean that recovery of fees for

work performed by paralegals is never compensable. This interpretation conflicts with numerous Sixth Circuit cases upholding an award of paralegal fees in fee-shifting cases. *See, e.g., Watchtower Bible and Tract Soc. of New York, Inc. v. Village of Stratton, Ohio,* 240 F.3d 553, 569 (6th Cir.2001) (affirming the district court's award of over $4,000 for paralegal fees); *Harper v. B.P. Exploration & Oil, Inc.,* 3 Fed. Appx. 204, 206, 2001 WL 92139 (6th Cir.2001) (upholding the magistrate's determination of reasonable attorney and paralegal hourly rates for § 1988 fee petition); *Granzeier v. Middleton,* 173 F.3d 568, 577–78 (6th Cir.1999) (affirming award of paralegal fees).

Instead, *Mr. and Mrs. R* appears to hold that paralegal fees are not compensable when paralegals or other non-lawyers (for example, law students) performed work that would constitute the unauthorized practice of law under state law. In Ohio, § 4705.01 of the Revised Code prohibits the practice of law by any person "unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules." Defendant fails to show that the paralegal performed work that constituted the practice of law under Ohio law. The decision in *Mr. and Mrs. R.* is neither persuasive nor binding.

Moreover, there is no evidence that the paralegal work for which plaintiff requests fees otherwise violated the law, was inappropriate, or is non-compensable. Defendant argues that some of the work plaintiff's counsel's paralegal performed, including her attendance at mediation and the due process hearing, did not require the professional training of a paralegal. *See People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1315 (7th Cir.1996)

("The only inquiry for requested paralegal fees should be whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder."). Plaintiff, however, notes that the paralegal performed several professional functions at the mediation and hearing, including tracking witness testimony, recording documentary evidence, managing exhibits, and taking trial notes. Additionally, plaintiff asserts that the paralegal assisted plaintiff's counsel with researching and writing responsibilities. These are all activities for which a paralegal is eminently suited and properly employed. Plaintiff's request for fees for work performed by the paralegal is reasonable.

### c. Expert Witness Fees

Defendant argues that expert witness fees are not available under IDEA. Defendant relies mainly on *T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469 (7th Cir. 2003). In *T.D.,* the Seventh Circuit held that because IDEA does not contain explicit authorization to award expert witness fees; such fees are not available to prevailing parties in IDEA cases.

Defendant also cites the Supreme Court's decision regarding the availability of expert witness fees under 42 U.S.C. § 1988 in *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). In *Casey,* the Court held that because § 1998 did not at the time contain an explicit provision authorizing the award of expert witness fees, such fees were not available under the statute. Shortly after this decision, Congress amended § 1988 explicitly to authorize the award of expert witness fees to prevailing parties, at the district court's discretion.[3]

3. The statute now states "[i]n awarding an attorney's fee under subsection (b) of this section … the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(c).

Congress has not passed a similar amendment to IDEA's fee-shifting statute, 20 U.S.C. § 1415(i)(3)(B), which otherwise uses language similar to that in the former version of § 1988.[4]

Several courts have held that the Supreme Court's decisions in *Casey* and *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (holding that courts may not tax expert witness fees against the losing party beyond the $30 per day authorized in 28 U.S.C. § 1821(b) unless otherwise authorized by statute) dictate a similar holding under IDEA's fee-shifting statute. *See T.D.*, 349 F.3d at 481–82; *Neosho R–V Sch. Dist. v. Clark*, 315 F.3d 1022, 1031 (8th Cir.2003); *Eirschele v. Craven County Bd. of Educ.*, 7 F.Supp.2d 655, 659–60 (E.D.N.C.1998); *Cynthia K. v. Bd. of Educ. of Lincoln–Way High Sch. Dist.210*, No. 95 C 7172, 1996 WL 164381, at *2 (N.D.Ill.1996). Defendant urges this court to follow this line of cases. I decline to do so.

■ It is true, as defendant points out, that IDEA's fee-shifting statute does not specifically list expert witness fees as included in "reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Defendant fails, however, to note that the House Conference Committee Report's Joint Explanatory Statement, filed prior to the passage of the final version of the IDEA fee-shifting provision, states:

> The conferees intend that the term 'attorneys' fees as part of the costs' include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian's case in the action or proceeding, as well as traditional costs incurred in the course of litigating a case.

H.R. Conf. Rep. No. 99–687, at *5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1807, 1808.

Nor does the defendant acknowledge that Justice Scalia, writing for the majority in *Casey*, cited this legislative history as evidence that Congress intended to distinguish its use of the phrase "attorneys' fees as part of costs" in the IDEA statute from its use of that phrase in other fee-shifting statutes:

> WVUH cites a House Conference Committee Report from ... 1986, stating: 'The conferees intend that the term 'attorneys' fees as part of the costs' include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the ... case.' ... In our view this undercuts rather than supports WVUH's position: The specification would have been quite unnecessary if the ordinary meaning of the term included those elements. The statement is an apparent effort to *depart* from ordinary meaning and to define a term of art.

499 U.S. at 91 n. 5, 111 S.Ct. 1138 (internal citations omitted) (emphasis in original).

Other courts, as well, have found that the House Conference Committee Report's

---

**4.** Prior to the *Casey* decision, § 1988 stated: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Casey*, 499 U.S. at 85 n. 1, 111 S.Ct. 1138.

IDEA's fee-shifting statute states: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

explanation establishes that Congress did not intend IDEA's fee-shifting statute to be interpreted as limiting attorney fees and costs to exclude expert witness fees. *See Brillon v. Klein Indep. Sch. Dist.*, 274 F.Supp.2d 864, 870–72 (S.D.Tex.2003); *B.D. v. DeBuono*, 177 F.Supp.2d 201, 207–08 (S.D.N.Y.2001); *Pazik v. Gateway Reg'l Sch. Dist.*, 130 F.Supp.2d 217, 220 (D.Mass.2001); *P.G. v. Brick Township Bd. of Educ.*, 124 F.Supp.2d 251, 267 (D.N.J.2000); *Mr. J. v. Bd. of Educ.*, 98 F.Supp.2d 226, 242–43 (D.Conn.2000); *Bailey v. District of Columbia*, 839 F.Supp. 888, 892 (D.D.C.1993).

An award of expert witness fees as part of attorney fees and costs under IDEA conforms with the unique nature of IDEA proceedings. Adversarial IDEA proceedings routinely involve diagnosis of a child's disability or disabilities by one or more doctors or other experts. The parties to such proceedings rarely could conduct a thorough and complete presentation and evaluation of a child's educational needs without consulting experts as to the child's physical, mental, social, and emotional condition and educational needs. Congress intended, and I find the statute authorized compensation of experts as part of recoverable "attorneys' fees and costs."

Thus, plaintiff's request for expert witness fees as part of her motion for attorney fees and costs is proper and reasonable.

### 2. Plaintiff's Request for Fees Is Not Barred by Procedural Error

■ Defendant claims that plaintiff's request for fees is procedurally barred because she did not achieve the specific relief she initially sought in her request for a due process hearing. Defendant argues that the Supreme Court's decision in *Buckhannon*, 532 U.S. 598, 121 S.Ct. 1835, not only redefines and limits the meaning of the term "prevailing party" for the purposes of awarding fees, but also allows an award of fees only where the prevailing party, as so defined, has achieved the relief requested in her initial complaint, rather than "unrequested" results via the IHO's decision.

I decline to extend the holding in *Buckhannon* to bar or limit fee awards in this manner. Defendant cites no legal precedent for such application of the *Buckhannon* holding. I have already ruled that plaintiff is a prevailing party in this case, finding that she achieved a change in the legal relationship between the parties and secured necessary and previously unavailable educational services for her son.

Moreover, to require that prevailing parties must achieve exactly and completely the results that they requested in their initial demand for a due process hearing, as defendant urges here, would undermine the purposes of the due process hearing and the negotiations and evaluations leading to the hearing. In this case, the IHO found, at plaintiff's request and after listening to five days of testimony, that defendant had unlawfully denied Lucas's right to FAPE. It is true, as defendant points out, that the IHO ordered defendant to include in Lucas's IEP additional services that plaintiff did not originally request. Plaintiff, however, sought those changes in Lucas's IEP, as an alternative remedy, after hearing the testimony of Lucas's doctor and others at the hearing.[5] These facts demonstrate that the due pro-

---

**5.** As the Supreme Court explained in *Buckhannon*, "an enforceable judgment permits an award of attorney's fees." 532 U.S. at 608 n. 9, 121 S.Ct. 1835. The fact that plaintiff obtained a judicial order finding that defendant had violated the law and ordering defendant to provide plaintiff's son proper and necessary services to remedy the situation and provide Lucas with a FAPE is certainly enough under *Buckhannon*'s rationale to avail plaintiff of a fee award.

cess hearing was not a static process, but a dynamic endeavor, in which Lucas's parents, teachers, school administrators, and doctors attempted to agree on the best way to educate him. *See Phelan,* 8 F.3d at 373–74. I do not read *Buckhannon* to require denying plaintiff a fee award because she engaged in this process and adjusted her proposed resolutions as the hearing progressed.

Defendant further argues that plaintiff's failure to request in her initial complaint the results ultimately ordered by the IHO violates the letter of IDEA by failing to meet the requirements of 20 U.S.C. § 1415(b)(7)(B). Under this provision, a parent's request for a due process hearing must provide notice to the school of the child's identity, the nature of the problem, and a proposed resolution to the problem "to the extent known and available to the parents *at the time....*" 20 U.S.C. § 1415(b)(7)(B)(iii) (emphasis added). Defendant argues that plaintiff's request violates this statute because she did not, at the time she filed her request for a due process hearing, specify any potential solution to Lucas's problems other than transfer to the alternative school.

This argument, like others asserted by the defendant, contravenes the purpose of the IDEA's due process hearing procedures, which are designed to find the best solution for educating children with disabilities. The fact that Lucas's mother, *at the time she filed her request,* did not foresee a solution that would allow Lucas to remain at his current school with different IEP services does not mean that she failed to provide notice to defendant about Lucas's problem and a possible resolution to it, as required by § 1415(b)(7)(B). Plaintiff properly and appropriately adjusted her expectations and found alternative solutions for providing a suitable education for her son as the proceedings progressed.

Plaintiff's request for fees, therefore, will not be barred or reduced based on any procedural defeat.

### 3. Plaintiff's Fee Request Will Not Be Reduced for Partial Success

Defendant argues that plaintiff's failure to achieve success on her request that Lucas be transferred to another school dictates that her fee award be reduced. The Supreme Court prescribed the method for determining whether partial success justified adjustment of a fee award in *Hensley,* 461 U.S. 424, 103 S.Ct. 1933; *see also Farrar,* 506 U.S. at 114–15, 113 S.Ct. 566; *Texas State Teachers' Ass'n.,* 489 U.S. at 791–92, 109 S.Ct. 1486; *Phelan,* 8 F.3d at 374–75; *Moore v. Crestwood Local Sch. Dist.,* 804 F.Supp. 960, 966–68 (N.D.Ohio 1992) (citing *Hensley,* 461 U.S. 424, 103 S.Ct. 1933; *Lewis v. Sears Roebuck & Co.,* 845 F.2d 624, 631–32 (6th Cir.1988)). The *Hensley* analysis begins with two questions: 1) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which [she] succeeded?"; and 2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" 461 U.S. at 434, 103 S.Ct. 1933.

Plaintiff's counsel has a duty to make a good faith effort to exclude from a fee request hours that were spent working on an unsuccessful claim. *Id.* at 435, 103 S.Ct. 1933 ("work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved") (internal quotation omitted). Where, however, plaintiff's claims for relief involve "a common core of facts or will be based on related legal theories," then "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.*

Additionally, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* The focus is on the results obtained by the prevailing party, not on the number of claims on which plaintiff succeeded or failed. This is because "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.; see also Moore v. Freeman,* 355 F.3d 558, 565–66 (6th Cir. 2004) (explaining that the district court has discretion to determine the fee award, based on the *Hensley* considerations; further explaining that the fee award should not be reduced "by the ratio of successful claims to claims overall").

■ In the instant case, plaintiff successfully achieved a ruling that defendant had denied Lucas FAPE and prepared an inadequate IEP to address fully Lucas's unique needs.[6] Although the IHO had no authority to find that Lucas has Asperger's Syndrome, as plaintiff had requested, she did discuss his Asperger's diagnosis and incorporate that diagnosis into her order. Moreover, the IHO ordered defendant to add certain services to Lucas's IEP, resulting in tangible changes to his IEP and provision of services Lucas needed but had previously not been receiving. Plaintiff argued, and the IHO accepted, that defendant had failed properly to acknowledge, learn about, and address the issues arising from Lucas's Asperger's Syndrome.

The only claim on which plaintiff was not successful, and the basis for defendant's argument that plaintiff's fee petition should be reduced, is the request that Lucas be placed in an out-of-district school. Plaintiff claims that she initially

felt so frustrated with defendant and what she perceived to be the inadequate services Lucas was receiving that she wanted Lucas to be transferred to a school for autistic children. Plaintiff saw this as the ideal resolution to her son's situation. Throughout the course of the proceedings, she adjusted her assessment and concluded that, if defendant made some changes to Lucas's IEP, she would abide by continued placement in defendant's district. In the end, the IHO decided to keep Lucas in the defendant's district, as this was the least restrictive environment appropriate to his needs, provided that defendant made some necessary changes to Lucas's IEP.

Plaintiff's counsel has made an effort to expunge fees associated with plaintiff's request for a transfer to the alternative school. He has, for example, removed the expert witness' fee for visiting the school in question. The remainder of the work for which he has billed plaintiff, however, was based on a "common core of facts" focused on proving the overall inadequacy of Lucas's situation and the need to make changes to provide him FAPE.

Plaintiff obtained excellent results for her son, achieving rulings that defendant had violated IDEA and that Lucas's IEP was inappropriate and a decision ordering provision of certain services for Lucas that defendant had previously refused to implement. As the Sixth Circuit has explained, "[t]he plaintiff succeeds to the extent that the school's proposed IEP is shown to be inappropriate, even if the ALJ and the courts are not convinced to order the plaintiff's own preferred alternative." *Kari H.,* 1999 WL 486400, at *2. Plaintiff in the instant case achieved all of her substantive requests, and failed only to obtain her first choice desired alternative

---

**6.** I note that, prior to the IHO's decision, defendant argued strenuously that Lucas's IEP was appropriate and additional services were not necessary to provide him FAPE. (*See* Doc. 7, Brief of Respondent, Perrysburg Exempted Village School District, at 6–7).

solution to address the situation. As *Hensley* explains, this is not sufficient justification for reducing her fee award. 461 U.S at 435, 103 S.Ct. 1933.

Because plaintiff was successful in achieving her central goals of obtaining a finding that her son had been denied FAPE and an order directing defendant to rewrite Lucas's IEP to provide him significant additional educational services, I hold that she is entitled to the fees and costs she seeks in full. *See Phelan*, 8 F.3d at 373 ("although plaintiff sought … [an alternative therapy] throughout the proceedings, a broader goal existed as stated in the hearing officer's first decision: 'The fundamental purpose of this particular proceeding has become to obtain an appropriate IEP for [the student].' "); *Kari H.*, 1999 WL 486400, at *2 (noting that the *Phelan* plaintiff obtained a "complete overhaul" of the student's IEP, which justified a full fee award, whereas a proceeding that resulted in only some improvements to a student's IEP was not as significant and justified the district court's decision to reduce the plaintiff's fee award).

Thus, defendant's request that plaintiff's fee award be reduced to reflect only partial success will be denied, and plaintiff's motion for attorney fees and costs will be granted in full. Plaintiff will be awarded $43,891.00 for attorney fees and costs.

### 4. Plaintiff May Recover Fees Associated with Preparing Her Motion for Fees and Costs

■ Finally, plaintiff is entitled to recover additional fees she has incurred in preparing and arguing her motion for attorney fees and costs. *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987) ("The cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over …. ").

The Sixth Circuit in *Coulter* developed a general formula for determining the maximum amount a prevailing party may recover as a fee award for preparation of the motion for fees, explaining that "[t]he legislative intent behind attorney fee statutes … was to encourage lawyers to bring successful civil rights cases, not successful attorney fee cases." *Id.* The court, therefore, limited the amount recoverable to three percent of the hours allowed for preparing and litigating the main case, without a trial, and five percent of the total hours spent on the main case, with a trial, unless unusual circumstances compel otherwise. *Id.* These limitations, the court explained, were necessary to ensure that the fee awarded would not be out of proportion to the fee in the main case or encourage protracted litigation. *Id.*

The Northern District of Ohio, however, has held that the limitations imposed in *Coulter* do not apply in IDEA cases because those cases present the "unusual circumstances" contemplated by the Sixth Circuit as an exception to the *Coulter* limitations. *Moore v. Crestwood Local Sch. Dist.*, 804 F.Supp. 960, 969–70 (N.D.Ohio 1992). The court in *Moore* distinguished *Coulter*, which was based on a § 1988 petition for fees, from a request for fees arising from an IDEA due process proceeding. As the court explained, the main case in an IDEA proceeding is litigated at the administrative level, not in federal court. *Id.* at 970. To limit plaintiffs' recovery of fees for preparing the fee petition, therefore, disadvantages IDEA plaintiffs much more than it does civil rights plaintiffs, because it requires the party to file a new case in federal court if the defendant will not agree to pay fees without litigation. *See id.*

Moreover, the court in *Moore* found that the nature of the IDEA litigation at issue "was sufficiently 'unusual' to depart from

the *Coulter* guidelines." *Id.* In that case, as in the instant case, defendants took "the less than moderate position that plaintiffs had not prevailed at the administrative level." *Id.* Although the defendant in the instant case does not appear to have unnecessarily delayed litigation or protracted the dispute over the fee award, as in *Moore,* it has forced plaintiff to expend a great deal of time parsing through its numerous arguments. This appears to have become, largely as a result of defendant's opposition to paying any attorney fees, an example of the "second major litigation" against which the Supreme Court admonished in *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. Plaintiff's counsel should not be penalized for this circumstance.

Furthermore, it makes sense to depart from *Coulter* in IDEA cases such as this, where parents and children with disabilities may often face greater difficulty than litigants even in other civil rights cases in finding competent counsel to assist them at due process hearings. This is a complex and, in many respects, unique area of law. The ability to recover not only the fee award for a qualified special education attorney's work on the substantive case, but also for the federal claim a parent must file to recover fees from an unwilling defendant, is crucial to ensuring that parents and children have access to adequate representation when they seek to enforce the provisions of IDEA.

Plaintiff, therefore, is entitled "to complete departure from the *Coulter* guidelines." *Moore,* 804 F.Supp. at 971. Her fee award will include $16,891.75 for fees and costs associated with litigating her motion for fees.

## CONCLUSION

In light of the foregoing, it is

ORDERED THAT plaintiff's motion for attorney fees and costs be, and the same hereby is, granted and defendant's motion for denial or reduction of plaintiff's attorney fees and costs be, and the same hereby is, denied. Defendant shall pay plaintiff a total of $60,782.75 for her attorney fees and costs.

So ordered.