8 F.3d 369
 87 Ed. Law Rep. 46, 3 A.D.D. 518
 Susan PHELAN, individually and in her capacity as guardian
of Terry Phelan, Plaintiff-Appellant (92-1148),
Cross-Appellee,
v.
George BELL (92-1218) and Wayne-Westland Community Schools
(92-1322), Defendants-Appellees, Cross-Appellants,
Michigan Protection and Advocacy Service, Inc., Proposed Intervenor.
 Nos. 92-1148, 92-1218 and 92-1322.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 25, 1993.
Decided Oct. 26, 1993.
Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 8, 1993.
 
 Richard J. Landau, Dykema, Gossett, Spencer, Goodnow & Trigg, Ann Arbor, MI (argued and briefed), for Susan and Terry Phelan.
 Thomas H. Schwarze, Robert A. Lusk (argued and briefed), Keller, Thoma, Schwarze, Schwarze, Dubay & Katz, Detroit, MI, for George Bell.
 Stewart R. Hakola, Michigan Protection & Advocacy Service, Marquette, MI, for Michigan Protection and Advocacy Service, Inc.
 Russell S. Slatkin (briefed), Stewart Slatkin, Collins, Blaha & Slatkin, Southfield, MI, for Wayne-Westland Community Schools.
 Before: KENNEDY and SUHRHEINRICH, Circuit Judges; SPIEGEL, District Judge.*
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 Plaintiff Susan Phelan challenges the district court's order awarding only a portion of her attorney's fees from administrative proceedings brought under the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485. For the following reasons, we AFFIRM in part, and REVERSE in part.
 
 I.
 
 2
 Plaintiff Susan Phelan is the mother of Terry Phelan, a severely handicapped eighteen-year old boy. Terry engages in severe Self-Injurious Behavior (SIB) by striking his head up to 120 times per minute.
 
 
 3
 The Wayne-Westland Community School District, Terry's resident district, contracts with the Northville Public Schools to care for and educate Terry. Concerned that Northville's programs were not sufficient to control Terry's SIB, plaintiff sought alternative treatments and learned of the Self-Injurious Behavior Inhibiting System (SIBIS), an electronic device that straps to the head and generates a mild, brief electrical shock in response to each instance of SIB.
 
 
 4
 In October 1989, the schools held an Individual Educational Planning Conference (IEPC) for Terry. See 34 C.F.R. § 300.343 (1992); Michigan Admin.Code R. 340.1721c (Supp.1987) (requiring IEPC for disabled children). During the IEPC, the schools proposed an Individualized Education Program (IEP) for Terry which would have continued prior ineffective programs. Dissatisfied, plaintiff proposed use of SIBIS. Northville's Human Rights and Behavior Modification Review Committee refused to authorize SIBIS because it violated school guidelines against the use of contingent electric shock, as well as Michigan's Corporal Punishment Act, Mich.Comp.Laws Ann. § 380.1312 (West Supp.1992).[1]
 
 
 5
 In response to Northville's decision, plaintiff filed a complaint in district court on November 13, 1989, seeking declaratory and injunctive relief requiring use of SIBIS.[2] On November 21, 1989, the district court dismissed this action without prejudice, and directed plaintiff to exhaust her administrative remedies. The following day, administrative hearings began, during which plaintiff argued that Terry's present IEP was inadequate and that SIBIS was necessary to treat Terry's SIB. On December 26, 1989, plaintiff filed a second suit seeking the same relief as the first, as well as a preliminary injunction requiring use of SIBIS. The district court refused to issue the injunction, and the hearings continued.
 
 
 6
 After plaintiff concluded her presentation, defendants proposed a new IEP using an "educative" approach not yet pursued. The Michigan Protection and Advocacy Service (MPAS) intervened and proposed a second new approach called "functional communication training." Neither proposal included SIBIS. Plaintiff continued to urge the use of SIBIS.
 
 
 7
 After the hearings concluded, the hearing officer issued his decision, which summarizes the issues as follows:
 
 
 8
 1. What is an appropriate IEP for Terry which will meet his unique needs and the requirements of both the [IDEA] and Michigan's Mandatory Special Education Act (MMSEA)?
 
 
 9
 . . . . .
 
 
 10
 2. Does Michigan's Corporal Punishment Act ... prohibit utilization of the SIBIS device ...?
 
 
 11
 . . . . .
 
 
 12
 3. Do the Northville School District's "Guidelines for the Use of Behavioral Techniques" ... prohibit utilization of the SIBIS device ...?
 
 
 13
 . . . . .
 
 
 14
 4. If the SIBIS device is utilized as a component of a student's behavior management program, does it constitute a "related service" within the meaning of [the IDEA], MMSEA, or both, and, if so, must it be provided at no cost to the parent?
 
 
 15
 As to the first issue, the hearing officer held that an appropriate IEP for Terry must include the approaches proposed by defendants and the MPAS, and ordered the parties to hold an IEPC to implement these approaches. The hearing officer did not order the use of SIBIS, but as to issues two and three, the hearing officer did find that neither Michigan's Corporal Punishment Act nor the school guidelines prohibited SIBIS. The officer added that the device could be used only after all reasonable alternatives had failed. Finally, the hearing officer held that SIBIS was not a "related service" under the IDEA.
 
 
 16
 In June 1990, an IEPC was held to develop the new IEP. Plaintiff objected to certain specifics of the IEP. On September 21, 1990, the hearing officer issued a second decision which addressed plaintiff's objections, but left the first decision otherwise unchanged. The parties agreed to the final IEP on November 28, 1990.
 
 
 17
 On August 23, 1990, plaintiff filed a motion for attorney's fees under IDEA, 20 U.S.C. § 1415(e)(4)(B).[3] On December 26, 1990, the district court dismissed plaintiff's second complaint without prejudice.[4] On December 27, 1990, plaintiff sought a hearing on her motion for attorney's fees. The district court granted plaintiff's motion for attorney's fees on December 13, 1991 without a hearing, and awarded her 25% of her attorney's fees because she had succeeded on only one of the four issues involved.
 
 
 18
 Both parties now appeal the district court's award of attorney fees.
 
 II.
 
 19
 The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485, requires that local schools provide a "free appropriate public education" to "children with disabilities." 20 U.S.C. §§ 1400(c), 1415(a). To implement the IDEA, schools must prepare a written IEP at the beginning of each school year for each disabled student. 20 U.S.C. §§ 1401(20), 1414(a)(5); 34 C.F.R. §§ 300.340-.349 (1992). Parents are guaranteed notice of school decisions and access to school records regarding their child. 20 U.S.C. § 1415(b)(1)(A), (C)-(D). Dissatisfied parents may challenge a school's proposed IEP at "an impartial due process hearing." 20 U.S.C. § 1415(b)(1)(E), (b)(2).
 
 
 20
 The IDEA also provides for an award of reasonable attorney's fees to a prevailing party under the act. 20 U.S.C. § 1415(e)(4)(B). We have interpreted § 1415(e)(4)(B) by analogy to 42 U.S.C. § 1988, the attorney's fees provision for civil rights actions. See Krichinsky v. Knox County Schools, 963 F.2d 847, 849 (6th Cir.1992) (citing Angela L. v. Pasadena Indep. School Dist., 918 F.2d 1188, 1193 (5th Cir.1990) (citing H.R.Rep. No. 296, 99th Cong., 2d Sess. 5-6 (1985); S.Rep. No. 112, 99th Cong., 2d Sess. 13-14 (1985))); Shelly C. v. Venus Indep. School Dist., 878 F.2d 862, 864 (5th Cir.1989), cert. denied, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990). We review awards of attorney's fees for an abuse of discretion. Perotti v. Seiter, 935 F.2d 761, 763 (6th Cir.1991) (section 1988 case). A court "abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.) (citations omitted), cert. dismissed, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985).
 
 A.
 
 21
 To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)). In Farrar v. Hobby, --- U.S. ----, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties ... in a way that directly benefits the plaintiffs." Id. --- U.S. at ----, 113 S.Ct. at 573. See Citizens Against Tax Waste v. Westerville City School, 985 F.2d 255, 257-58 (6th Cir.1993). The Supreme Court has rejected a "central issue test" which would require a party to succeed on the main issue of the litigation to be considered "prevailing." Krichinsky, 963 F.2d at 850 (citing Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 790, 109 S.Ct. 1486, 1492-93, 103 L.Ed.2d 866 (1989)). Rather, a party who partially prevails is entitled to an award of attorney's fees commensurate to the party's success. Id.
 
 
 22
 Defendants argue that plaintiff is not a "prevailing party" because the hearing officer did not mandate the use of SIBIS. Defendants' selective focus on SIBIS ignores the reality that, although plaintiff sought SIBIS throughout the proceedings, a broader goal existed as stated in the hearing officer's first decision: "[T]he fundamental purpose of this particular proceeding has become to obtain [an appropriate IEP] for Terry." Plaintiff's success in this regard furthered the underlying goal of the IDEA--providing a "free appropriate public education" for disabled students. See 20 U.S.C. § 1400(c); Angela L., 918 F.2d at 1195.
 
 
 23
 The due process hearings were dynamic and interactive, not static. Plaintiff's action resulted in a marked change in the legal relationship between the parties in a number of ways. First, plaintiff succeeded in obtaining a determination that SIBIS was a viable option for Terry, both legally and in actuality. Although SIBIS is not presently required for Terry, the hearing officer stated:
 
 
 24
 If ... the programs and services required to address Terry's SIB have to be reconsidered, the decision of this Hearing Officer should not be understood to require that the SIBIS device be implemented at that point in time. However, if we know then nothing more than we know now with the exception that the combined educative and functional communication training approaches [proposed by defendants and MPAS] have not been effective, the options remaining to address Terry's SIB are extremely limited, and each involves significant risks and disadvantages. One of those options is utilization of the SIBIS device. (emphasis added).
 
 
 25
 In fact, the only other options identified were either constant total restraint or a frontal lobotomy. Second, plaintiff's persistence brought about a definite change in Terry's legal relationship with defendants. Before the due process hearings, defendants proposed merely to continue an IEP that was admittedly unable to address, let alone reduce, Terry's SIB. Now, defendants are required to implement a new IEP with new approaches to Terry's SIB. Cf. Krichinsky, 963 F.2d at 850 (fact that "school system now must provide [the student] with additional therapy" held to make the plaintiffs prevailing parties under § 1415(e)(4)(B)) (emphasis original). Based on plaintiff's success on the possible use of SIBIS and her role as a catalyst for the new IEP for Terry, we hold that plaintiff is a "prevailing party."[5]
 
 B.
 
 26
 Having concluded that plaintiff is a prevailing party, we must consider whether the method used by the district court to compute the award constituted an abuse of discretion. Under Hensley, calculation of a fee award involves two steps. A court first determines "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," as an objective starting point. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. The court then may adjust the objective figure upward or downward for such factors as common facts or related legal theories. Id. at 435, 103 S.Ct. at 1940. See also id. at 430 n. 3, 103 S.Ct. at 1938 n. 3 (listing other factors which may be considered). Where commonality is present, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." Id. at 435, 103 S.Ct. at 1940. Limited success may justify the reduction of the objective amount, id. at 435-36, 103 S.Ct. at 1940-41 but the court may not reduce the initial figure by "comparing the total number of issues in the case with those actually prevailed upon." Id. at 435 n. 11, 103 S.Ct. at 1940 n. 11. Here, the district court erred when it: (1) included in its initial calculation attorney's fees for the first complaint, and (2) reduced the total figure by a purely quantitative analysis awarding plaintiff 25% of her attorney's fees because she technically succeeded on only one of four issues.
 
 
 27
 The district court dismissed plaintiff's first complaint without prejudice for failure to exhaust administrative remedies. Thus, the true accomplishment of the work performed on the first complaint was a ruling from the district court that plaintiff had chosen the wrong forum; which we do not perceive as successful relief. It is for this reason that we think the district court erred in including fees for the filing of the first complaint in the initial calculation of plaintiff's success for purposes of § 1988.
 
 
 28
 Secondly, the district court's 75% reduction rests on an inaccurate view of plaintiff's overall relief. Plaintiff brought her complaint in the first place because Terry's IEP was ineffective. While the complaint focused on the SIBIS option, which has not been ordered presently, it also led to a dynamic, interactive administrative process that resulted in a new, satisfactory IEP for Terry, as well as rulings that allow for the future use of SIBIS. Plaintiff's actions not only obtained certain favorable rulings on SIBIS, but also served as the catalyst for the adoption of the new IEP ordered by the hearing officer. In light of the overall relief obtained by her in the administrative proceedings, we conclude that plaintiff is entitled to 100% of her attorney's fees.[6]
 
 C.
 
 29
 Plaintiff also contends that the district court erred by not providing a factual basis for its calculations of her award for expert witnesses' fees and other costs. The district court determined its award according to 28 U.S.C. § 1920 and § 1821, and awarded $1,480 rather than plaintiff's requested $19,972.13. The district court did not explain how or why it arrived at this figure. Like attorney's fees awards, an award of costs must be supported by factual findings. See Goostree v. Tennessee, 796 F.2d 854, 863-64 (6th Cir.1986) (remanding for factual findings to support award of costs), cert. denied, 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987). On remand, the district court must provide the factual basis for its award of costs.
 
 III.
 
 30
 For the foregoing reasons, we REVERSE the district court's decision to award plaintiff's attorney's fees on the first complaint; AFFIRM the district court's decision to award plaintiff's attorney's fees on second complaint; but REVERSE the calculation of that award. On REMAND, the district court is therefore directed to order 100% of plaintiff's reasonable attorney's fees incurred in connection with the filing and litigation of the December 26, 1989 complaint. SO ORDERED.
 
 
 31
 KENNEDY, concurring in part and dissenting in part.
 
 
 32
 I agree that plaintiff was a prevailing party in some portion of her claim in that she got a decision that the Self Injurious Behavior Inhibiting System ("SIBIS") could be considered as an alternative method in a future behavior plan for Terry. Thus, she had limited success on her SIBIS claim and is entitled to some attorney's fee.
 
 
 33
 However, I cannot agree that plaintiff was a catalyst for the treatment plan that was adopted, especially when once the plan was presented by defendants, she rejected it.
 
 
 34
 In defending plaintiff's appeal of the refusal to include SIBIS in Terry's treatment plan, the school district contacted experts who opposed the use of SIBIS. One of these experts was Dr. Luanne Meyer. After reviewing Terry's records, she advised the school district of an alternative plan. This was the plan presented by defendants at the hearing and adopted by the hearing officer. In a remote sense, one can say that the plaintiff's demand for a hearing on SIBIS was a catalyst for the plan since the school district would not have contacted this expert who opposed SIBIS if plaintiff had not insisted on SIBIS. Ordinarily, however, a plaintiff's action is a catalyst for the relief actually sought in the action. Here, plaintiff's demand for a hearing on SIBIS was a catalyst for an alternative plan she did not seek.
 
 
 35
 Suppose for example some drug had been discovered while plaintiff's appeal seeking SIBIS was pending and the hearing officer incorporated that drug in Terry's plan. Would one say that filing the appeal was a catalyst for that relief?Finally, I would treat this as an exceptional case. We have the anomaly of finding plaintiff a prevailing party because she got relief she opposed to the end. To award full attorney's fees under these circumstances seems to me to be contrary to the intent of the statute. To award plaintiff her entire attorney fees for finally accepting an alternative defendant proposed will discourage school districts who learn of a better method during appeals from proposing them. It can also encourage parents to pursue non-meritorious appeals and hearings in the hope that something might result, as it did here. The statute permits attorney's fees in the discretion of the court. At least as to those fees incurred after the school district made its proposal, I would permit the District Court to limit plaintiff's fees to matters directly related to SIBIS.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Section 380.1312 provides, in pertinent part:
 (1) As used in this section, "corporal punishment" means the deliberate infliction of physical pain by any means upon the whole or any part of a pupil's body as a penalty or punishment for a pupil's offense.
 (2) A person employed by or engaged as a volunteer or contractor by a local or intermediate school board shall not threaten to inflict, inflict, or cause to be inflicted corporal punishment upon any pupil....
 Mich.Comp.Laws Ann. § 380.1312 (West Supp.1992).
 
 
 [2]
 In her complaint, plaintiff outlined the inability of defendants to deal effectively with Terry's SIB, and their refusal to use SIBIS. In her demand, plaintiff requested an injunction preventing defendants from interfering in any way with the use of SIBIS while Terry attended Northville; a declaratory judgment that Northville's guidelines against using electric shock are unconstitutional; a declaratory judgment that use of the SIBIS device is not prohibited by the Corporal Punishment Act; money damages; and other relief as deemed equitable by the court
 
 
 [3]
 Section 1415(e)(4)(B) provides:
 (B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.
 IDEA, 20 U.S.C. § 1415(e)(4)(B).
 
 
 [4]
 Defendants argue that by dismissing plaintiff's complaint prior to awarding plaintiff's attorney's fees, the district court divested itself of jurisdiction to make the award. We disagree. Motions for attorney's fees are collateral to the merits of an action and may be considered even after an action is terminated. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990); White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 1166 n. 13, 71 L.Ed.2d 325 (1982). The district court retained jurisdiction to consider plaintiff's motion
 Defendants also contend that Local Rule 17(n) for the Eastern District of Michigan barred plaintiff's motion. Local Rule 17(n) requires that motions for attorney's fees be filed within 30 days after the entry of judgment. Plaintiff filed her motion before the administrative process ended and before the district court dismissed her complaint; thus, we find that she complied with Local Rule 17(n).
 
 
 [5]
 Defendants also argue that attorney's fees are "unjust" here because of two "special circumstances." See Hensley, 461 U.S. at 429, 103 S.Ct. at 1937 (attorney's fees may not be awarded if "special circumstances" make the award "unjust"). First, defendants contend that their good faith bars an award. Second, defendants argue that an award of attorney's fees here will discourage schools from doing what they believe is best for students. As to the first argument, the good faith of the losing party does not render an award of attorney's fees unjust. Morscott, Inc. v. Cleveland, 936 F.2d 271, 273 (6th Cir.1991). As to the second argument, Congress has already determined the appropriateness of fee awards in the educational context by enacting § 1415(e)(4)(B). See Angela L., 918 F.2d at 1192-93 (discussing the congressional intent behind § 1415(e)(4)(B)). Thus, we find these arguments unavailing
 
 
 [6]
 Defendants also contend that the hearing officer's decision requires the same IEP as proposed by defendants and that plaintiff's award should therefore be reduced under 20 U.S.C. § 1415(e)(4)(F)(i) because she "unreasonably protracted the final resolution of the controversy" by not simply accepting the proposed IEP in January 1990. We disagree. First, the hearing officer's decision also included the MPAS's recommendation; it did not adopt defendants' proposed IEP alone. Moreover, merely pursuing the proceedings to a final decision did not unreasonably protract these proceedings. Even though the final decision required defendants' proposal, it also included critical decisions regarding the future use of SIBIS which would not have been made had plaintiff acceded to defendants' recommendation. Finally, plaintiff's actions were necessary to elicit the new proposal from defendants after she sought an informal resolution of her concerns. Cf. Johnson v. Bismarck Pub. School Dist., 949 F.2d 1000, 1004 (8th Cir.1991) (lack of notice to school about parents' concerns, and minimal attempts at informal negotiation supported finding that plaintiffs "unreasonably protracted" the litigation). We hold that plaintiff did not "unreasonably protract" these proceedings by refusing to accept defendants' proposed IEP