**TROY SCHOOL DISTRICT and BOARD OF EDUCATION OF THE TROY SCHOOL DISTRICT, Plaintiffs/Counter–Defendants,**

v.

**Spiro and Kimberly BOUTSIKARIS, on behalf of their son Jeremy Boutsikaris, Defendants/Counter–Plaintiffs.**

No. 01–75003.

United States District Court,
E.D. Michigan,
Southern Division.

May 12, 2004.

John L. Gierak, Esq., Troy, for plaintiff.

Richard J. Landau, Esq., Ann Arbor, for defendant.

## OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR ATTORNEYS' FEES

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiffs Troy School District and its Board of Education (collectively the "District") commenced this suit in this Court on December 27, 2001, challenging an administrative decision in which modest compensatory educational services were awarded to one of the District's former students, Jeremy Boutsikaris. Jeremy's parents, Defendants Spiro and Kimberly Boutsikaris (the "Parents"), answered the complaint on their son's behalf, and also asserted counterclaims alleging that two Individualized Education Programs ("IEPs") prepared by the District during Jeremy's 1999–2000 school year failed to provide their son with a free appropriate public education ("FAPE") as required un-der the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.

By Opinion and Order dated February 26, 2003, this Court granted in part and denied in part the parties' cross-motions for summary judgment. See Troy School District v. Boutsikaris, 250 F.Supp.2d 720 (E.D.Mich.2003). In so ruling, the Court rejected the challenges of the District and the Parents alike to the administrative decision of State Level Review Officer ("SLRO") Sidney Kraizman, and affirmed this administrative decision in all respects. Through this ruling, then, the Court denied the affirmative relief sought by both sides, and instead left them precisely in the same position they occupied before this suit was commenced.

As observed at the January 9, 2003 hearing on the parties' cross-motions, and then reiterated in the subsequent Opinion and Order, this substantive result was neither surprising nor terribly disappointing to the parties. The so-called "merits" of this case, after all, were viewed by both sides as a mere preamble to the true point of contention, the matter of attorneys' fees. In order to secure such a statutory award under the IDEA, the Parents had to establish their status as the "prevailing party" under 20 U.S.C. § 1415(i)(3)(B), and this entailed, at a minimum, that they successfully defend those portions of the SLRO's decision that were favorable to them. The District, for its part, has candidly admitted throughout this litigation that it has little quarrel with the modest relief awarded to the Parents in the SLRO's decision, and it professes—but has not yet demonstrated—a willingness to provide this relief. Nonetheless, the District believes itself compelled to challenge this aspect of the SLRO's decision, solely in order to avoid a substantial fee award to the Parents encompassing the totality of the lengthy ad-

ministrative and judicial phases of this litigation.

Against this backdrop, the Court now is confronted with the inevitable contest over attorneys' fees. Specifically, by motion filed on March 12, 2003, the Parents seek an award of attorneys' fees and expenses totaling $77,324.37. While both sides decry their unseemly focus on attorneys' fees, at the expense of greater attention and resources devoted to the education of Jeremy Boutsikaris, they insist that this is an unavoidable byproduct of the statutory scheme enacted by Congress. Upon carefully reviewing this statute, however, the Court is gratified to discover that it confers sufficient discretion to craft an award that is just and appropriate under the circumstances. Specifically, as discussed below, the Court finds that the Parents are the "prevailing party" within the meaning of the IDEA's fee-shifting provision, but that a "reasonable" attorneys' fee amounts to far less than they seek in their motion. It is the Court's sincere hope that this award might serve the salutary purpose of alerting parties and their counsel, when faced with similar circumstances, that the IDEA rewards cooperation over confrontation in crafting a child's educational program.

## II. ANALYSIS

### A. The Statutory Framework Governing Fee Awards under the IDEA

The IDEA includes a fee-shifting provision that allows parents, but not school districts, to recover their attorneys' fees under certain specified circumstances. Specifically, the statute provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Such an award may encompass the fees incurred in both the administrative and judicial phases of the case. See Eggers v. Bullitt County School District, 854 F.2d 892, 894–98 (6th Cir.1988).

Parents "may be considered 'prevailing parties' for purposes of attorney fees 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Berger v. Medina City School District, 348 F.3d 513, 526 (6th Cir.2003) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). In this respect, as others, "[t]he IDEA's fee-shifting provision is to be interpreted consistent with 42 U.S.C. § 1988, the attorney-fees provision for civil rights actions." Wikol ex rel. Wikol v. Birmingham Public Schools Board of Education, 360 F.3d 604, 611 (6th Cir.2004). In particular, "Sixth Circuit case law requires that a district court award attorney fees to a prevailing party where no special circumstances militate against such an award." Wikol, 360 F.3d at 611.

Notwithstanding this general presumption, however, a prevailing party is entitled only to an award of "reasonable attorneys' fees." 20 U.S.C. § 1415(i)(3)(B) (emphasis added). While the "starting point" for this determination is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," there "remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Hensley, 461 U.S. at 433–34, 103 S.Ct. at 1939–40 (footnote omitted). Thus, if the prevailing party "achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley, 461 U.S. at 440, 103 S.Ct. at 1943; see also Wikol, 360 F.3d at 612. Indeed, because "the most critical factor in determin-

ing the reasonableness of a fee award is the degree of success obtained," a "plaintiff who formally 'prevails'" but "recovers only nominal damages" typically should receive "no attorney's fees at all." *Farrar v. Hobby,* 506 U.S. 103, 114–15, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494 (1992) (internal quotations and citation omitted).

The IDEA supplements this "reasonableness" inquiry by directing that fee awards be reduced or altogether eliminated under certain specified circumstances. First, an award is precluded if a parent rejects a written, timely offer of settlement and then fails to obtain more favorable relief. *See* 20 U.S.C. § 1415(i)(3)(D)(i). Next, the award must be reduced if the court finds that (i) the parent "unreasonably protracted the final resolution of the controversy," (ii) counsel's hourly rate exceeds the "rate prevailing in the community," (iii) the "time spent and legal services furnished were excessive considering the nature of the action or proceeding," or (iv) the parents' attorney failed to "provide to the school district the appropriate information in the due process complaint." 20 U.S.C. § 1415(i)(3)(F). These reductions do not apply, however, "if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding." 20 U.S.C. § 1415(i)(3)(G).

**B. The Parents Qualify as "Prevailing Parties" in This Litigation.**

■ Under this statutory framework, the Parents in this case presumptively are entitled to an award of "reasonable attorneys' fees" so long as they and their son Jeremy are deemed the "prevailing parties." The Parents argue that they have satisfied this standard through the relief they obtained here and, especially, in the administrative decision by the SLRO. Although the District disputes this point, the Court views its challenge as more appropriately addressed in the context of the ensuing "reasonableness" inquiry.

As noted, the Parents qualify as "prevailing parties" so long as "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Berger,* 348 F.3d at 526 (internal quotations and citation omitted). As discussed in the Court's underlying summary judgment ruling, the Parents challenged the District's January 18 and May 2, 2000 IEPs as failing to provide Jeremy with a FAPE, and the SLRO ultimately concluded that the first of these IEPs failed to provide sufficient integration consultant services during the latter portion of Jeremy's fifth-grade year. The District commenced this action in order to contest this aspect of the SLRO's decision, but the Parents successfully withstood this challenge and obtained summary judgment in their favor on the District's claims.

■ These successes suffice to confer "prevailing party" status upon the Parents. "The definition of a prevailing party is a generous formulation that brings the plaintiff only across the statutory threshold." *Krichinsky v. Knox County Schools,* 963 F.2d 847, 850 (6th Cir.1992) (internal quotations and citation omitted). A party need not succeed on "the central issue" in order to obtain a fee award; rather, it is enough that he is "able to point to a resolution of the dispute which changes the legal relationship between [the parties]." *Krichinsky,* 963 F.2d at 850 (internal quotations and citation omitted). Here, by virtue of the SLRO's decision, which has withstood the challenges of both parties, the Parents were able to obtain additional services for their son Jeremy, however modest this result might be in comparison to the full relief they sought. Consequently, the Court holds that the Parents are "prevailing parties" within the meaning of

the IDEA's fee-shifting provision, § 1415(i)(3)(B).

## C. The Fee Award Sought by the Parents Must Be Reduced to Reflect a Reasonable Hourly Rate, and Also to Reflect Their Limited Success in the Administrative and Judicial Proceedings.

Having found that the Parents are "prevailing parties," the Court next must determine the amount of a "reasonable" attorney fee award. As noted, the starting point for this determination is the number of hours reasonably expended on the proceedings multiplied by a reasonable hourly rate. In a declaration accompanying the motion for fees, the Parents' counsel states that he and two associates at his firm provided legal services in this matter totaling $74,807.75, at hourly rates ranging from $145 to $300.[1] The Court's own tabulations further reveal that counsel billed a total of 391.75 hours in this case, including 248 hours in the administrative phase and 143.75 additional hours since this civil suit was brought. Dividing the total award sought by the number of hours billed, the Court arrives at an average billing rate of approximately $191 per hour.[2]

### 1. The Reasonableness of the Hourly Rate Sought by the Parents

■ Initially, the District challenges the reasonableness of the hourly rate charged by the Parents' lead attorney, Richard Landau, whose billing rate ranged from $220 per hour in 2000 to $300 per hour in 2003. By comparison, the District states that its counsel's hourly rate ranged from $145 to $150 for the period in question. In response, the Parents cite unpublished

IDEA cases from the Southern District of New York approving hourly rates of $350 or more. The Parents also point to an unpublished decision from this District and a published Sixth Circuit opinion, *Phelan v. Bell,* 8 F.3d 369, 374–75 (6th Cir.1993), both of which approved the full amount of attorneys' fees sought by Mr. Landau on behalf of his clients. More generally, Mr. Landau states his belief that the rates charged by himself and his associates "are consistent with the rates charged by lawyers of equivalent experience in southeastern Michigan," and he opines that "[t]his area of the law is highly specialized and requires familiarity both with the legal issues involving individuals with disabilities, as well as the educational and psychological issues encountered by such individuals." (Landau Decl. at ¶¶ 6–7.)

The IDEA expressly provides that fee awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The Supreme Court has emphasized that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed," and that "the district court may reduce the award accordingly" if this "documentation ... is inadequate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

---

1. The Parents also seek to recover expenses of $2,516.62, bringing the total award sought to $77,324.37.

2. Unfortunately, the Court was left to its own devices in compiling this information, as

counsel failed to provide any breakdown of hours expended in the various phases of this case, or even a grand total of hours billed throughout all of the proceedings.

reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).

The Parents and their counsel have manifestly failed to meet this burden here. The decisions they cite from the Southern District of New York plainly do not assist the Court in determining the rates prevailing in *this* community. In addition, the decisions cited by the Parents involving Mr. Landau date back to 1993 and February of 2000, and in any event disclose neither the hourly rates sought in those cases nor whether the opposing parties challenged these rates. This leaves only Mr. Landau's own unsupported assertion that his rates are consistent with those charged by other lawyers of equivalent experience in this region. This contention appears open to question, where the District's counsel, John Gierak, also has been litigating IDEA cases for a number of years, and yet charged the District an hourly rate of $145 to $150 during the relevant period. Accordingly, absent satisfactory evidence of the reasonableness of Mr. Landau's requested rates of $220 to $300 per hour, the Court finds that $150 is a reasonable hourly rate.[3]

## 2. The Degree of Success Achieved by the Parents

■ To this point, the Court has completed the first step toward determining an appropriate fee award by multiplying the hours expended times a reasonable hourly rate. Regarding the first part of this equation, the number of hours expended, the District does not specifically challenge any particular items in the billing records of the Parents' counsel. Rather, the District contends more broadly that the total fee award should be reduced, if

not altogether eliminated, in light of the limited success achieved by the Parents throughout the administrative and judicial proceedings. The Court agrees.

In order to evaluate the degree of success obtained by the Parents here, it is necessary to briefly recount the procedural background of this case.[4] Although the parties cooperatively developed a number of IEPs over the years, their views diverged concerning the appropriate content of two IEPs prepared during the latter portion of Jeremy's fifth-grade school year. The first of these, dated January 18, 2000, was the product of a three-year re-evaluation process, and this IEP set forth the terms of Jeremy's educational program for the remainder of his fifth-grade academic year. The second IEP at issue, dated May 2, 2000, was intended to establish the content of an educational program for Jeremy's sixth-grade year, his first at middle school.

Mrs. Boutsikaris attended both of the meetings at which these two IEPs were developed, and she expressed concern on both occasions that Jeremy was not making sufficient progress. More specifically, she protested that the two IEPs lacked any provisions for definite daily or weekly amounts of one-on-one direct instruction to address Jeremy's reading and writing difficulties. In response to this concern, the District's IEP team opined that one-on-one teaching is a matter of methodology and teaching strategy, and thus is not an appropriate subject to address in the specific terms of an IEP. Nonetheless, they sought to assure Mrs. Boutsikaris that one-on-one instruction would be provided as needed, with Jeremy's teachers left free to reevaluate his needs on an ongoing basis.

---

3. Multiplying this hourly rate times the 391.75 hours claimed in the Parents' motion, the Court arrives at a revised figure of $58,762.50 in attorneys' fees.

4. A more extensive summary is set forth in the Court's prior Opinion and Order. *See Boutsikaris,* 250 F.Supp.2d at 725–28.

Dissatisfied with this resolution, Mrs. Boutsikaris refused to sign the January 18, 2000 IEP, and she formally expressed her disagreement with the May 2, 2000 IEP by requesting a due process hearing. The Parents also removed Jeremy from the District and enrolled him in the private Eton Academy for the 2000–01 school year. Following a seven-day due process hearing in November of 2000, featuring the testimony of fourteen witnesses and the submission of over 400 exhibits, a Local Hearing Officer ("LHO") decided entirely in favor of the District, finding (i) that the May 2, 2000 IEP provided Jeremy with a FAPE in accordance with federal and state law, (ii) that the Parents were not entitled to reimbursement of the expenses incurred in enrolling Jeremy at the Eton Academy, and (iii) that the Parents had not adequately preserved their challenges to the January 18, 2000 IEP.

The Parents filed an administrative appeal with the appropriate state agency, and the matter was assigned to State Level Review Officer ("SLRO") Sidney Kraizman. In decisions dated October 1 and November 27, 2001, the SLRO largely affirmed the findings of the LHO, with two exceptions. First, the SLRO deemed it appropriate to consider whether the January 18, 2000 IEP provided Jeremy with a FAPE during the latter portion of his fifth-grade school year. Next, upon performing this inquiry, the SLRO concluded that this IEP should have provided for fifteen (versus six) 20–minute sessions of integration consultant services per month, resulting in a total shortfall of three hours per month for the roughly five-month period that this IEP remained in effect. The SLRO ordered that this shortfall be addressed through after-school tutoring or a summer program, with these additional

services to be provided by the end of August, 2002.

Rather than providing these services, the District elected to commence this suit on December 27, 2001, challenging the two points upon which the SLRO had decided in favor of the Parents. The Parents, in turn, filed counterclaims alleging that the January 18 and May 2, 2000 IEPs did not provide a FAPE for their son Jeremy, and also seeking reimbursement of the expenses incurred in enrolling Jeremy at the Eton Academy. In a February 26, 2003 Opinion and Order addressing the parties' cross-motions for summary judgment, the Court affirmed the SLRO's decision in all respects, and thereby denied all of the affirmative relief sought by the District and the Parents alike. As noted at the conclusion of this ruling, counsel for both sides candidly acknowledged that "these substantive matters are a mere preamble to the parties' chief concern—namely, whether the Parents will be awarded their attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)." *Boutsikaris*, 250 F.Supp.2d at 737.

Upon surveying this procedural landscape, the Court is struck by the minimal substantive impact of nearly three years of administrative and judicial proceedings. At the end of the day, the District's educational program for Jeremy was found to lack *three additional hours per month*— over and above the two hours provided under the January 18, 2000 IEP—in consultative and direct integration consultant services.[5] This modest relief, in turn, was limited to the period governed by the January 18, 2000 IEP—namely, the roughly five-month interval from mid-January to mid-June of 2000, after which this program was supplanted by the May 2, 2000 IEP.

---

**5.** As noted by the District, this three-hour figure represents about 2.5 percent of the roughly 120 hours per month that a typical student spends in academic pursuits at school.

Thus, by challenging the IEPs and requesting a due process hearing, the Parents have obtained a grand total of **fifteen hours** of additional educational services for Jeremy.[6]

This is a far cry from the relief sought by the Parents in the administrative and judicial proceedings. As reflected in their brief filed at the conclusion of the due process hearing, the Parents requested that a variety of elements be incorporated into an appropriate IEP for Jeremy, including: (i) 25 hours per week of remedial instruction, two hours of which would consist of one-to-one direct instruction in reading and writing skills with an LD certified teacher; (ii) a maximum 8–to–1 student/teacher ratio; (iii) two 25–minute individual sessions per week with a speech and language teacher; and (iv) weekly reports from the school to the Parents. (*See* Plaintiffs' Response, Ex. 4, Post–Hearing Br. at 25–26.) The Parents also sought reimbursement of Jeremy's tuition at Eton Academy, which was $15,150 for the 2000–01 academic year. Similarly, in their counterclaims in this action, the Parents sought a determination that the January 18 and May 2, 2000 IEPs failed to provide Jeremy with a FAPE, and they requested awards of compensatory education and reimbursement of the tuition paid to Eton Academy.

Indeed, even to the extent that the Parents prevailed before the SLRO, securing an additional 15 hours of integration consultant services for Jeremy, the District correctly points out—and the Court likewise observed in its earlier Opinion and Order—that "the Parents never advocated additional services of this sort." *Boutsikaris*, 250 F.Supp.2d at 731. Rather, as demonstrated in both their post-hearing brief to the LHO and their summary judg-

ment motion in this Court, the Parents primarily sought a specified amount of one-to-one direct instruction by an LD certified teacher in reading and writing skills. Yet, both the LHO and the SLRO declined to order these services, finding that such a specific mandate would detract from the progress being made by Jeremy in group settings and general education classes, and agreeing with the District that Jeremy's teachers should be given the flexibility to determine his needs on a day-to-day basis. In so concluding, both the LHO and the SLRO specifically rejected the testimony of the Parents' expert, Dr. Roger Lauer, finding that it rested upon incorrect premises about Jeremy's purported lack of progress in various classroom settings. Given that the relief requested by the Parents was based almost entirely upon the recommendations of Dr. Lauer, it is clear that they achieved minimal success in persuading the state administrative officers to adopt their views as to the appropriate educational program for Jeremy.

More generally, with the benefit of hindsight from a neutral vantage point, this Court perceives considerable irony in the path that this case has traveled. While the parties and their counsel have waged battle on such points as "methodology" versus "delivery of service" and the applicable burdens of proof, the state hearing officers, and especially the SLRO, were engaged in the far more important and worthwhile process of determining which methods and services have actually produced positive results for Jeremy. The additional services ordered by the SLRO, in particular, rested upon his observation that Jeremy had made considerable progress as a result of his work with the inte-

---

6. Assuming a pay rate of $15–$25 per hour for a teacher to provide the supplemental after-school services ordered by the SLRO, the District estimates the cost of this 15–hour shortfall as $225 to $375. This stands in sharp and obvious contrast to the $77,324.37 in fees and expenses sought in the Parents' motion.

gration consultant, Ms. Fredrickson. Indeed, as this Court previously observed, "Jeremy's improvement was attributable, at least in significant part, to the fact that Ms. Fredrickson *deviated from,* rather than adhered to, the strict terms of the January 2000 IEP," *Boutsikaris,* 250 F.Supp.2d at 732, by providing services both to Jeremy's general education teacher (as called for in the IEP) *and* directly to Jeremy himself.

While the District, at least, has characterized the SLRO's decision on this point as "bizarre," and has questioned whether the SLRO has the necessary educational expertise to make findings about the appropriate type and level of services, (*see* Plaintiffs' Motion for Summary Judgment, Br. in Support at 6–7 & n. 3), this Court cannot help but wonder whether this purported lack of "expertise" operated to the SLRO's advantage. Lacking any ideological predispositions of the sort displayed by the parties and their counsel, the SLRO seemingly was able to carefully examine the record for evidence of the services that had proven most beneficial to Jeremy in overcoming his disabilities. This thoughtful review, combined with the efforts of the teachers and consultants engaged in the day-to-day task of educating Jeremy, produced the sole affirmative relief obtained by the Parents in this case.

Viewed in this context, the Parents' degree of success in this case is properly characterized as quite limited. In this regard, the Court agrees with the District that the Sixth Circuit's decision in *Kari H. v. Franklin Special School District,* 187 F.3d 636, 1999 WL 486400 (6th Cir.1999), is instructive here. In that case, the defendant school district proposed an IEP under which plaintiff Kari H. would spend five hours each day in a separate classroom for disabled children and two hours per day in a regular classroom. Under this IEP, Kari was to attend these classes at an elementary school, even though she was of middle-school age. Kari's parents challenged this program and, in an ensuing hearing, an administrative law judge ("ALJ") found that the IEP was deficient to the extent that it would place Kari in mainstream classes with younger children, as opposed to students her own age. The ALJ also found that Kari's multidisciplinary team ("M–Team") should be expanded to include a behavior specialist and a communications expert.

Kari appealed this administrative decision to a federal district court, which affirmed the ALJ's order in all respects. The district court then awarded only one-third of the attorneys' fees sought by Kari, reasoning that she "had obtained only minimal relief and that the relief she achieved was in large part not what she had requested." *Kari H.,* 1999 WL 486400, at *2. In affirming this substantial reduction in fees, the Sixth Circuit distinguished its earlier decision in *Phelan, supra,* in which the plaintiff's full fee request was granted despite her failure to prevail on all issues:

> Kari relies on *Phelan* for her argument that she is entitled to an award covering all her fees and costs. In *Phelan,* the school district's IEP for the child was ineffective. The child's mother wanted the school to implement a particular type of training, and the school refused. At the administrative hearing, the school counter-offered a plan that was better than the current IEP, and an independent non-profit agency also suggested a new approach. The ALJ ordered a new plan that drew on both of the new proposals but did not include the training requested by the mother. However, the ALJ rejected some of the school's arguments against that type of training and stated that it would be an option if other techniques failed. We held that the plaintiff was entitled to a full fee award because she

had succeeded in her central goal of obtaining an appropriate IEP. *Phelan,* 8 F.3d at 373.

Kari has not been as successful as the plaintiff in *Phelan.* The ALJ approved most of the IEP proposed by the school district, imposing modifications that affected approximately two hours of each school day and the composition of Kari's M–Team. These changes are improvements, but they are not as significant as the complete overhaul of the plan in *Phelan.* Kari's main challenge to the proposed IEP was to the placement in a segregated classroom for most of the day, and she has not prevailed on that issue.

The district court felt that reducing Kari's fee award to one-third of actual fees and expenses was appropriate. We cannot say that this was an abuse of discretion .... [The district judge] reviewed the pleadings and briefs filed a various stages to show that Kari's success was minimal compared to what she sought. We think *Phelan* makes the point that the plaintiff's success should not be measured solely in terms of what she requested in the complaint. The plaintiff succeeds to the extent that the school's proposed IEP is shown to be inappropriate, even if the ALJ and the courts are not convinced to order the plaintiff's own preferred alternative. However, as we have noted, Kari demonstrated only that two aspects of the IEP were inappropriate. Those two issues primarily affected only two hours out of her seven-hour school day. Because much of Kari's IEP remained sub-

stantially the same, we conclude that the district court's award of partial fees was not an abuse of discretion.

*Kari H.,* 1999 WL 486400, at *2.

The Sixth Circuit's reasoning in *Kari H.* is fully applicable here. The Parents in this case have successfully altered only one aspect of the January 18, 2000 IEP, far short of the "complete overhaul" that was achieved in *Phelan.* This relief, moreover, affected only three out of the roughly 120 hours per month that Jeremy spent in school, considerably less than the two hours per day that were affected by the modifications in *Kari H.*[7] Indeed, the relief here is even more limited, because it affected a program that was in place for only a few months, and had no impact whatsoever on the May 2, 2000 IEP that was to govern Jeremy's education going forward. As to this IEP, the District's judgment has been affirmed in all respects in both the administrative and judicial proceedings. In addition, the Parents have been denied the most significant monetary relief they sought—namely, reimbursement of Jeremy's tuition at the Eton Academy.

Nonetheless, the Court cannot agree with the District that the Parents' success has been so minimal that they should be denied any fee award whatsoever. First, the Parents did succeed in demonstrating that the January 18, 2000 IEP was inappropriate, and that additional services should have been provided to make this program more effective for Jeremy. Next, while the Parents did not secure the desired commitment to a specific amount of direct one-to-one reading and writing in-

---

**7.** The District also points out that Jeremy actually received some of the services ordered by the SLRO, even though they were not called for in the January 18, 2000 IEP. In particular, this IEP called for the integration consultant, Ms. Fredrickson, to provide purely consultative services to Jeremy's general education teacher, but Ms. Fredrickson none-

theless provided some services directly to Jeremy himself. It was only because of this deviation that the SLRO was able to determine that direct services were beneficial to Jeremy, and that more such services should have been provided under the January 18, 2000 IEP.

struction, the direct integration consultant services ordered by the SLRO are not wholly different in kind from the Parents' requested relief—both types of services, after all, entail direct one-to-one interaction between Jeremy and a teacher to address his reading deficit. The Parents also succeeded in persuading the SLRO that the January 18, 2000 IEP was a proper subject of administrative review. Finally, in the present action, the Parents successfully defended the SLRO's decision against the various challenges mounted by the District.

Upon weighing these various considerations, the Court finds that the Parents should receive an award that reflects a limited portion of their counsel's efforts in the administrative phase of this case, as well as a somewhat larger portion of counsel's efforts before this Court. If the Parents had set out to attain the limited educational benefits they received in the SLRO's decision, it seems fair to say that a seven-day due process hearing would not have been necessary, and that the parties would not have deemed it necessary to present the testimony of fourteen witnesses and to submit over 400 exhibits for the LHO's consideration. Indeed, as noted in the Court's prior decision, the "voluminous transcript" of this seven-day administrative hearing "is littered with lengthy speaking objections by counsel on such formalistic evidentiary matters as a witness's personal knowledge, matters which a competent hearing officer plainly would be capable of handling without 'help' from the attorneys." *Boutsikaris*, 250 F.Supp.2d at 737. Moreover, this presentation surely would have been even more tailored if, as turned out to be the case, the Parents had sought to modify only the January 18, 2000 IEP governing the latter portion of Jeremy's fifth-grade year. Despite all of the evidence offered by the Parents to demonstrate the inadequacy of the District's proposed program for Jere-

my, this program has been entirely vindicated going forward, and was found deficient in only one modest respect for the last few months of the 1999–2000 school year.

Accordingly, while the Parents and their counsel have itemized 248 hours of time spent in the administrative phase of this case, the Court finds that only 70 of these hours were reasonably spent in securing a limited modification of the January 18, 2000 IEP. Out of the total 248–hour figure, counsel spent 170 hours up to the point of the LHO's decision, which was entirely unfavorable to the Parents. While some of these efforts arguably laid the groundwork for the more favorable SLRO ruling, the Court believes that 40 hours of reasonably focused activity could have produced the record upon which the SLRO based this decision. Further, the Court finds that only 30 additional hours, of the 78 claimed by the Parents' counsel, were reasonably spent in securing the limited favorable aspects of the SLRO's decision. More generally, the Court concludes that 70 hours of reasonable efforts would have sufficed to discover and highlight the basis for the affirmative relief awarded by the SLRO— namely, that Jeremy's improvement in the latter half of his fifth-grade year was attributable in significant part to the direct services he received from the integration consultant, Ms. Fredrickson.

The Court views the judicial phase of this case in a somewhat different light. To be sure, while the Parents' attorneys have expended 143.75 hours in this phase, they failed to obtain any additional relief for their clients, but merely defended the SLRO's decision against the District's various challenges. Yet, the Court cannot overlook the important fact that the **District** instituted this action, thereby compelling the Parents to expend legal resources

**800**

in order to preserve the modest relief awarded to them by the SLRO.[8]

As discussed in greater detail below, the Court is not at all persuaded by the District's protests that the Parents surely would have brought this suit if the District had not, and that it was necessary for the District to act in order to prevent an excessive fee award to the Parents. On the first point, the brute fact is that *nobody knows* what the Parents might have done if the District had not commenced this action. More importantly, as will be seen below, the District's strategic decision to file this suit has done absolutely nothing to weaken the Parents' claim for attorneys' fees—to the contrary, it has *enhanced* the Parents' prospects of recovering a larger fee award. And, of course, the Parents necessarily have been compelled to incur additional legal expenses in order to defend against the District's claims in this action. It was entirely within the District's power to simply implement the modest relief awarded by the SLRO, and thereby cut off any possibility of additional attorneys' fees beyond that point. The District elected to follow a different course, leaving the Parents' little choice but to respond in kind.

Under these circumstances, the Court finds that a reasonable fee award should encompass a significant portion, but not all, of the legal services provided to the Parents in the judicial phase of this case. Undoubtedly, the proceedings before this Court would have been more streamlined if the Parents had adopted a purely defensive posture, arguing only that the SLRO's decision represented a reasonable exercise of his presumed educational expertise. Instead, the Parents elected to mount unsuc-

cessful challenges to other aspects of the SLRO's decision, and to again seek reimbursement of Jeremy's tuition at the Eton Academy. Yet, as noted in the Court's earlier Opinion, these affirmative efforts were not the central focus of the Parents' submissions, and most of their arguments were defensive in nature. Moreover, to the extent that the District devoted excessive resources to its affirmative claims in this case, the Parents necessarily were compelled to respond on each point in order to preserve their modest gains in the administrative proceedings. Accordingly, the Court finds that 90 hours is a reasonable amount of attorney time to achieve the wholly defensive success enjoyed by the Parents in the judicial phase of this case.

In sum, the Court concludes that a 160-hour total, versus the 391.75 hours claimed in the Parents' motion, represents a reasonable amount of time in relation to the modest success achieved by the Parents in this case. Multiplied by a reasonable hourly rate of $150, this results in an award of $24,000 in attorneys' fees. While this is considerably less than the $74,807.75 fee award sought in the Parents' motion, the Court finds that this reduced figure satisfies the statutory standard of reasonableness, where the Parents have obtained only limited additional services for their child covering a portion of his fifth-grade school year, and where they were unsuccessful in their principal goals of altering Jeremy's educational plan going forward and securing reimbursement of his private school tuition. This degree of success is perhaps more than nominal, but is far from enough to warrant the substan-

**8.** Although neither side has addressed the question, the Court's own research indicates that plaintiffs and defendants alike can qualify as "prevailing parties" under the IDEA's fee-shifting provision. *See Smith v. Roher,* 954 F.Supp. 359, 363–64 (D.D.C.1997). Thus, the Parents' status as defendants in this litigation does not render them ineligible to recover the attorneys' fees expended in the judicial phase of this case.

tial fee award requested in the Parents' motion.

### 3. The Additional Statutory Bases for Reducing a Fee Award

 Under the IDEA, a reasonable attorneys' fee award to a prevailing party is subject to reduction in certain specified circumstances, including where: (i) "the parent, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy," (ii) the fee award that would otherwise be authorized "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," or (iii) the "time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F). These reductions do not apply, however, "if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding." 20 U.S.C. § 1415(i)(3)(G). Although the Court readily concludes that the Parents "unreasonably protracted the final resolution of the controversy," it further finds that the District also did so, thereby precluding any further reduction in the Parents' fee award.

As observed in the Court's prior Opinion, this case has long since ceased to serve the goal of "ensur[ing] that Jeremy Boutsikaris was provided with educational services that would meet his needs and help him to achieve his academic potential." *Boutsikaris*, 250 F.Supp.2d at 737. Instead, "the attorneys entered the picture and the focus changed dramatically," resulting in proceedings devoted "largely to the unseemly spectacle of lawyers fighting over attorneys' fees." 250 F.Supp.2d at 737. While the parties and their counsel characterize this as an unfortunate but "inevitable byproduct of the federal statutory scheme," the Court already has re-

jected this contention, citing the attorneys' overriding obligation to "counsel their clients at the outset to weigh their fairly narrow differences against the potentially enormous cost of obtaining a slightly more favorable outcome through lengthy and contentious administrative and judicial proceedings." 250 F.Supp.2d at 737. Whether the attorneys failed to provide this advice or their clients failed to heed it, the result was the same—protracted litigation in which the marginal benefits were far outweighed by the costs, both in attorneys' fees and, more importantly, in resources diverted from the paramount educational mission of meeting Jeremy's needs.

Although examples of such misguided efforts abound in this case, it suffices for present purposes to identify one point in time where both parties "unreasonably protracted the final resolution" of this matter, thereby precluding any further reduction in the Parents' fee award. In particular, consider the circumstances presented at the conclusion of the administrative proceedings, which had resulted in a limited award of additional educational services to compensate for a deficiency in the January 18, 2000 IEP. At this point, the District could have simply provided the 15 hours of compensatory services ordered by the SLRO. Instead, the District commenced this action, ostensibly in order to challenge this aspect of the SLRO's decision. As the District's counsel readily concedes, however, the true purpose of this suit was to defeat the Parents' anticipated claim for attorneys' fees by overturning the sole affirmative relief awarded by the SLRO.

Perhaps the District was correct in assuming that the Parents and their counsel were bound and determined to seek an award of attorneys' fees. Yet, even so, this did not dictate the aggressive course of action pursued by the District here. There was simply no need, in particular, to

mount a challenge—and a failed one, at that—to the SLRO's limited award of compensatory services. The District instead could have sat back and awaited the Parents' anticipated claim for fees, and then responded with precisely the argument it is now making (and with considerable success)—namely, that the limited relief granted to the Parents in the administrative proceedings warrants at most a nominal fee award. Indeed, if the District had chosen this latter course, it would have been in a *better* position to contest a sizable fee award, as the District then would have been able to argue that the *Parents alone* had unreasonably prolonged the proceedings. Under these circumstances, the Court readily concludes that the District unreasonably protracted the final resolution of this case by pursuing an unnecessary challenge to the SLRO's decision on the merits, when the District's true goal was to minimize or eliminate a fee award to the Parents.

Likewise, at the same point in time, the Parents had an opportunity to step back from the brink by accepting the SLRO's award of compensatory services, and perhaps also seeking a modest award to cover their attorneys' fees in the administrative proceedings. Yet, rather than assuming this largely defensive posture, the Parents and their counsel adopted the tit-for-tat strategy of attacking the portions of the SLRO's decision that were unfavorable to them, and also resurrecting their twice-failed claim for reimbursement of Jeremy's private school tuition. These efforts, in turn, have been used to justify a still-larger fee award encompassing the judicial phase of the case, even though the Parents have obtained no additional substantive relief before this Court. As with the District, however, this strategy has proven counterproductive, serving to highlight the considerable disparity between the relief sought by the Parents and the modest compensatory services they have actually obtained.

In short, the Parents and the District alike have insisted that this Court revisit the merits of the thorough and thoughtful decisions issued by the LHO and the SLRO, even though both sides freely admit that their chief concern here is attorneys' fees. If it would have been somewhat unseemly to commence litigation that is focused solely upon the issue of attorneys' fees incurred in an administrative proceeding, it is wholly deplorable to cloak such efforts in the disguise of challenges on the merits. Through these devices, judicial resources have been expended in resolving issues that are mere proxies for the parties' true concerns. If this does not qualify as "unreasonably protract[ing]" the final resolution of this case, this statutory language surely is devoid of all meaning. Because both sides are equally culpable in this respect, the IDEA commands that the Parents' fee award cannot be further reduced on the grounds set forth at 20 U.S.C. § 1415(i)(3)(F).

### III. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' March 12, 2003 Motion for Attorneys' Fees is GRANTED IN PART, in accordance with the rulings in this Opinion and Order. IT IS FURTHER ORDERED that Defendants be awarded attorneys' fees of $24,000.00 and costs of $2,516.62, for a total award of $26,516.62.[9]

---

9. In light of the Court's conclusion that the attorneys for the District and the Parents alike failed to serve the best interests of their clients, and instead fostered an atmosphere of

litigation for litigation's sake, the Court hopes and expects that the Parents and their counsel will carefully consider devoting a significant portion of this award to reimbursing the cost of Jeremy Boutsikaris's private school tuition.